Jimmy R. GOODWIN, et al., Plaintiffs,

v.

FORD MOTOR CREDIT COMPANY, Defendant.

Civil Action No. 97–T–315–S.

United States District Court, M.D. Alabama, Southern Division.

July 17, 1997.

William Joseph Baxley, Charles A. Dauphin, Joel Evan Dillard, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, Garve Ivey, Jr., King, Ivey & Junkin, Jasper, AL, Roger W. Kirby, Richard L. Stone, Andrea Bierstein, Kaufman, Malchman, Kirby & Squire, LLP, New York City, Allison Shelley, Birmingham, AL, for Plaintiffs.

Thomas M. Byrne, Kristen Jones Indermark, Sutherland, Asbill & Brennan, Atlanta, GA, Dennis G. Pantazis, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Defendant.

*MEMORANDUM OPINION*

MYRON H. THOMPSON, Chief Judge.

Plaintiffs Jimmy R. and Brenda S. Goodwin and Lera J. and Terry A. Scott brought suit on March 7, 1997, on behalf of themselves and a putative nationwide class, against defendant Ford Motor Credit Company (FMCC). They allege violations of the federal Truth in Lending Act, 15 U.S.C.A. §§ 1601–1693r, and applicable state consumer protection statutes, and also complain of wilful misrepresentation and deceit in violation of state laws. This court has jurisdiction to hear these claims under 15 U.S.C.A. § 1640(e), and 28 U.S.C.A. §§ 1337, 1367. This lawsuit is now before the court on FMCC's motion to compel arbitration and stay judicial proceedings pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–16, and on the motion by the Goodwins and the Scotts for partial summary judgment, or alternatively for a jury trial, on the issue of the arbitrability of their claims. For the reasons that follow, FMCC's motion will be granted, and the Goodwins and the Scotts' motion denied.

## I. BACKGROUND

On May 28, 1996, the Goodwins purchased an automobile for their personal use from a Dothan, Alabama dealership, and financed the purchase, along with an extended warranty, through a credit agreement with the dealer. The Scotts purchased an automobile on July 17, 1996, from another Dothan area dealership, and they, too, financed the purchase, along with an extended warranty, through the dealer.[1] In both cases, the purchase and finance agreements, or installment sales contracts, were standardized forms produced by FMCC and provided to the dealers. The forms contemplated and provided for immediate assignment of the dealers' rights and obligations under the credit agreements to FMCC upon execution by the dealer and purchaser. Accompanying each installment sales contract, as a separate document, was a preprinted arbitration agreement whereby the dealer and purchaser, by signing, essentially agreed to arbitrate any and all disputes relating to the sale and financing of the automobile.[2]

---

1. FMCC counterclaims against just the Scotts, in its answer to the complaint, for defaulting on the purchase agreement. However, this distinction between the posture of the Goodwins' and the Scotts' claims has no bearing on the issues before the court.

2. The form reads, in pertinent part, as follows:

The installment sales contracts provide for acceleration of payments or repossession by the dealer upon default by the purchasers, and further provide that any holder of the consumer credit contract (i.e., FMCC) is subject to all claims and defenses which the debtor could assert against the seller.

Where the installment sales contracts itemize the amount financed in the Goodwin and Scott contracts, under "amounts paid on your behalf" to third parties, each contract specifies an amount paid over to the issuer of an extended service contract. The gist of their claims is that it is the standard practice of FMCC to participate in the making of, or at least to knowingly adopt, false and misleading disclosures in installment sales contracts that are assigned to it by prearrangement with dealers, such that certain amounts are represented as paid or payable out by the dealers to other service vendors (in some cases, FMCC or a related corporate entity) on behalf of purchasers, when, in fact, FMCC knows that a substantial portion of these amounts is retained by dealers as hidden commissions. FMCC improperly benefits from this practice because as the ultimate holder of the installment sales contracts, it collects interest from service contract purchasers even on the money retained by dealers as their commissions from FMCC. Presumably, the hidden commission is also an incentive to dealers to sell more extended service contracts, which also inures to FMCC's benefit when it is the service vendor, while invariably increasing the purchase

price to customers. These practices and claims are alleged, because of the standardized nature of the installment sales contracts, to be representative of those that pertain to a putative class of plaintiffs nationwide.

FMCC filed demands for arbitration of both the Goodwin and Scott claims on February 24, 1997, and then moved this court on April 10, 1997, to stay judicial proceedings, 9 U.S.C.A. § 3, and compel arbitration, 9 U.S.C.A. § 4. In response, the Goodwins and the Scotts moved for partial summary judgment on May 6, 1997, on the ground that the arbitration clauses they signed are void for lack of mutuality, and thus unenforceable. They moved, alternatively, for a jury trial on the arbitrability issue. They also filed a supplemental memorandum of law on May 15, 1997, in opposition to the motion to compel arbitration and stay judicial proceedings, in which they further argue that FMCC is not a party to their arbitration agreements and thus has no standing to compel arbitration of their claims against it. In another memorandum of law in further support of their motion for summary judgment, filed on May 30, 1997, the Goodwins and the Scotts argue that the arbitration agreements are unenforceable because they are unconscionable contracts of adhesion. Because, for the reasons explained below, none of the arguments raised by the Goodwins and the Scotts is well-taken, their motion for partial summary judgment will be denied, and FMCC's motion to compel arbitration and to stay proceedings will be granted.

"Buyer/lessee acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce."

"Buyer/lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts ... or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. § 1 et seq. and according to the Com-

mercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, ... the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing, any representations, promises or omissions made in connection with negotiations for the sale, lease or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle."

## II.  DISCUSSION

### A.

■ In their first and second briefs, the Goodwins and the Scotts argue that under Alabama common law of contracts, unless an arbitration agreement mutually obligates parties to arbitrate disputes with each other, particularly in the circumstances where each is most likely to have cause to sue the other, an arbitration agreement is void for lack of mutuality. They cite a decision of the Alabama Supreme Court issued on January 10, 1997, in a case entitled *Northcom, Ltd. v. James*, 694 So.2d 1329 (Ala.1997). The lead opinion of that case seemed to hold, based on a few cases interpreting and applying what was in its day, but is no longer, New York State arbitration law, that each party's promise to arbitrate disputes is required consideration for the other's promise, and without that 'mutual obligation' to arbitrate, an arbitration clause is void. Later, withdrawing that lead opinion and substituting a new one for it, the Alabama Supreme Court acknowledged that no severable, let alone equal and identical, consideration is required for an arbitration agreement to be enforceable, so long as the whole contract that it refers to or is contained within has consideration flowing in both directions. *Northcom, Ltd. v. James*, 694 So.2d 1329, 1335, 1336 (Ala.1997). This revised view conforms with prior Alabama law, as well as the view of the Restatement adhered to in other states. *See Marcrum v. Embry*, 291 Ala. 400, 282 So.2d 49, 51, 52 (1973); *WMX Techs., Inc. v. Jackson*, 932 F.Supp. 1372, 1374–75 (M.D.Ala.1996); Restatement (Second) of Contracts § 79 (1981). However, the revised lead opinion sought to distinguish, within the doctrine of mutuality of obligation, between a legal requirement of separate or severable consideration for an arbitration agreement, and an equitable or fairness requirement of 'mutuality of remedy.' The opinion recharacterized its holding as pertaining to a requirement of mutuality of remedy, and the Goodwins and the Scotts reshaped their argument accordingly.

By 'mutuality of remedy,' the lead opinion meant that if one party has recourse to an equitable remedy of specific performance, the other party must also have adequate remedy for securing performance of the first party's remaining obligations under the contract. If it does not have assurance that the party seeking specific performance must and will itself perform its remaining obligations, the court may refuse to order specific enforcement. *See* 5A Corbin on Contracts, § 1183 (1964). "However, the law does not require that the parties have similar remedies in case of breach, and the fact that specific performance or an injunction is not available to one party is not a sufficient reason for refusing it to the other party." Restatement (Second) of Contracts, § 363 cmt. c (1981).

The question for this court, therefore, is: Is the promise to arbitrate disputes an obligation under the contract that may be specifically enforced? It is not a first-order obligation, i.e., the primary, bargained-for consideration in the contract, such as payment of money, or transfer of title in a vehicle. Nor is it a second-order obligation, as understood by the *Northcom* court—that is, an obligation to 'provide access to,' or make available a particular remedy, 694 So.2d at 1336–37—since both an Article III court and an arbitration panel are fora that afford access to potential remedies for breach. It is, in effect and at best, simply a third-order obligation to use a nonjudicial forum for resolving disputes that arise under the contract.

If an arbitration agreement is, in any sense, a promise to perform, it is not self-evident that the arbitration agreements at issue here do not allow the Goodwins and the Scotts to seek specific enforcement of FMCC's promise to arbitrate disputes, if they wish to. A court could very well decide that the scope of the arbitration agreements is such that if the Scotts, for example, dispute that they owe FMCC any money on their installment sales contract, FMCC must arbitrate with them. Even if a court were to decide that they cannot seek specific performance from FMCC in this manner, it is perfectly obvious that the Goodwins and the Scotts do not believe they have no other remedy for a failure by FMCC to perform its substantial obligations under the installment sales contracts, as the bringing of this lawsuit well attests. Thus, the modern version

of the doctrine of mutuality of remedy, as found in the Restatement and the Corbin treatise, is not violated.

Moreover, the instance the *Northcom* Court uses to illustrate where it might deny the equitable remedy of specific enforcement of an arbitration clause, is in the case of an unconscionable arbitration agreement, blurring together the ideas of mutuality of remedy and unconscionability. 694 So.2d at 1336–37. Its treatment of the doctrine of unconscionability will be discussed in Part IIB., below.

Finally, of the six Justices hearing the case, only one other Justice concurred in the substituted lead opinion in the *Northcom* case, which introduces a rather novel, if not revolutionary, doctrine of contract law. In its strong version, it holds that each party to an arbitration agreement must be able to compel the other to arbitrate disputes whenever it would be most advantageous to themselves to do so, or the agreement will not be enforced. At the very least, it holds that both sides may have to have symmetrical remedies in an adhesion contract, or it may be found unconscionable. The weight of precedent and scholarship, together with the reasons articulated above, generate too much ballast for this doctrine to be able to lift off and go anywhere powered by the voices of only two Justices. The arbitration agreements at issue here are not void for lack of mutuality of remedy.

### B.

▐ next argument the Goodwins and the Scotts raise is that because of a lack of mutuality of remedy in the installment sales contract—that is, because the arbitration agreements require them to arbitrate any claim they are likely to have against FMCC, while the installment sales contracts reserve for FMCC, as assignee, the right to self-help (repossession) and, perhaps, judicial remedies in the event of default by the Goodwins and the Scotts—the arbitration agreements are oppressively, and therefore unconscionably, one-sided.

▐ The Goodwins and the Scotts point out that the FAA does not require the enforcement of an arbitration provision where it is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The United States Supreme Court has confirmed that § 2 "gives States [] method[s] for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision" both in equity and under principles of contract law. *Allied–Bruce Terminix v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995). The Alabama Supreme Court has also recognized that a finding that an arbitration clause is an unjust and unreasonable contract of adhesion might be grounds not to enforce that clause under the FAA. *See Ex parte Merrill Lynch, Pierce, Fenner & Smith*, 494 So.2d 1, 4 (Ala. 1986).

▐ "Moreover, Alabama statutory law empowers a trial court essentially to modify a consumer finance or credit contract, the provisions of which it finds as a matter of law to be unconscionable." *Roberson v. The Money Tree of Alabama*, 954 F.Supp. 1519, 1524 (M.D.Ala.1997). The Alabama Mini–Code, 1975 Ala.Code § 5–19–16, provides that, "With respect to a consumer credit transaction, if the court as a matter of law finds the contract or any provision of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable provision, or it may so limit the application of any unconscionable provision as to avoid any unconscionable result." The language of this section mirrors a provision in the sale of goods chapter of the Alabama Commercial Code, 1975 Ala.Code § 7–2–302(1), governing consumer sales.[3] *See, e.g., Lloyd v. Service Corp. of Alabama, Inc.*, 453 So.2d 735, 739–40 (Ala.1984) (applying § 7–2–

---

**3.** Section 7–2–302(1) provides that "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

302 by analogy to find clauses waiving landlord tort liability in residential leases unconscionable); *Cleveland Insurance Agency, Inc. v. Redshaw, Inc.,* 524 So.2d 367, 369 (Ala.Civ.App.1987) (finding contract not unconscionable where both parties were sophisticated corporate entities who negotiated the contract over several months).

■ "However, it would be difficult for a court to decide this issue 'as a matter of law' because 'Alabama law provides no implicit standard of unconscionability. Each case must be decided on its own facts.' *E & W Bldg. Material v. American Sav. & Loan Ass'n,* 648 F.Supp. 289, 290 (M.D.Ala.1986) (finding loan contract not unconscionable where sophisticated and knowledgeable borrower was not 'taken in' by a party possessing vastly superior knowledge and experience)." *Roberson,* 954 F.Supp. at 1524–25 (footnote omitted).[4] Generally, under Alabama case law, "unconscionability includes an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party. *West Point–Pepperell, Inc. v. Bradshaw,* 377 F.Supp. 154 (M.D.Ala. 1974). Few Alabama cases address the issue, but at least one case holds that it is the unequal bargaining power of the parties that gives rise to an unconscionable contract. *Lloyd v. Service Corp.,* 453 So.2d 735 (Ala. 1984)." *The Advertiser Co. v. Electronic Eng'r. Inc.,* 527 So.2d 1317, 1320 (Ala.Civ. App.1988). *See also Taylor v. Leedy & Co., Inc.,* 412 So.2d 763, 765–66 (Ala.1982) (factors bearing on the issue of whether a contract should not be enforced because unconscionable include the bargaining power of the parties, the availability of meaningful choices,

and whether the provisions unreasonably favor one party). Most recently, the Alabama Supreme Court ruled that relief premised on a finding of unconscionability is an extraordinary remedy, reserved for occasions when there is an absence of meaningful choice for an unsophisticated or uneducated party to a contract, the terms are unreasonably unfavorable to that party, that party is at a bargaining disadvantage, and there are oppressive, one-sided or patently unfair terms in the contract. *Ex parte Isbell,* 1997 WL 99725, at *8 (Ala. March 7, 1997)(citing *Layne v. Garner,* 612 So.2d 404, 404 (Ala. 1992)).

While it may be easy to say that the Goodwins and the Scotts had virtually no bargaining power and that meaningful choices were unavailable to them, the court cannot conclude that the contract terms at issue were unreasonably unfavorable to them. In other words, the Goodwins and the Scotts have not identified what it is that they have lost in their arbitration agreements that is so patently unfair and unreasonable as to be unconscionable.

■ A party cannot rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionability; it must still be gauged by the actual circumstances of the case, and not in the abstract. As this court noted in *Roberson,* the real question is whether an arbitration agreement is so unfavorable to a party that it simply would not have been reasonable for that party knowingly to accept it, given any meaningful choice. Just as in *Roberson,* what the Goodwins and the Scotts have not demonstrated to the court is that resolving their claims against

4. In *Roberson,* the court further explained that, "This definitional haziness is not endemic to Alabama law, but rather derives from the Uniform Commercial Code, also known as the U.C.C., which declines to define the term unconscionability. U.C.C. § 2–302; William D. Hawkland, Uniform Commercial Code Series, 2–302:01 (1984) ('the meaning of the word "unconscionable" is not clear'); Duesenberg & King, Sales and Bulk Transfers under the U.C.C., § 4.08[2][c] ('[N]owhere does … the Code attempt a definition of "unconscionable". Nothing whatsoever of the term's content can be learned from a reading of [section 2–302], and very little more from a study of its official

comments.'). Some jurisdictions have articulated a distinction between procedural (bargaining process) and substantive (fairness) unconscionability, *see, e.g., World Enterprises., Inc. v. Midcoast Aviation Servs., Inc.,* 713 S.W.2d 606 (Mo.App.1986), while others have attempted to enumerate a list of usual factors that would be found in and surrounding unconscionable contracts. *See, e.g., John Deere Leasing Co. v. Blubaugh,* 636 F.Supp. 1569 (D.Kan.1986) (10 elements, including use of preprinted forms on take it or leave it basis, excessive price, denial of basic rights and remedies, obfuscatory language, etc.)." 954 F.Supp. at 1524–25 n. 7.

FMCC through arbitration significantly deprives them of remedies for the wrongs they feel they have undergone. "For example, they have not shown that they cannot obtain through arbitration the very same relief that would be otherwise available in a court action." *Roberson*, 954 F.Supp. at 1525–26.

In their support, the Goodwins and the Scotts cite the recent substituted opinion of the Alabama Supreme Court in *Northcom*, for the novel proposition, under Alabama common law of contracts, that "in a case involving a contract of adhesion, if it is not shown that the party in an inferior bargaining position had a meaningful choice of agreeing to arbitration or not, and if the superior party has reserved to itself the choice of arbitration or litigation, a court may deny the superior party's motion to compel arbitration based on the doctrines of mutuality of remedy and unconscionability." 694 So.2d at 1338. However, this statement offers the Goodwins and the Scotts no succor, for many reasons.

■ First, while paying lip-service to the notion that its principle "is equally true as to any unconscionable term of a contract of adhesion," *id.*, the Alabama Supreme Court relies on the uniqueness of the concept of arbitration under Alabama law to support the principle. The court explained:

"The element of unconscionability in the context of an arbitration clause is supplied by the fact that, by agreeing to arbitrate, a party waives his right to a remedy by due process of law,' Ala. Const.1901, § 13, and his 'right of trial by jury,' Ala. Const.1901, § 11, and U.S. Const. Amend. VII. To allow such a waiver in an adhesion contract without a showing that it was voluntarily made might well be unconscionable. Moreover, a court in this state that is asked to enforce an arbitration clause is asked to rule contrary to the prohibition in Section 10 of our Constitution 'That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party,' Ala. Const.1901, § 10. To enter such a ruling, a state court is entitled to require a clear showing of preemption of state law under the Supremacy Clause of the United States Constitution and a clear showing that enforcement of the arbitration clause would not be unconscionable."

*Id.* Therefore, as a rule of unconscionability that applies, if not exclusively, at least explicitly and strikingly to disfavor predispute arbitration agreements, the rule almost certainly violates the policy, embodied in 9 U.S.C.A. § 2, and articulated in *Allied–Bruce*, 513 U.S. at 280–82, 115 S.Ct. at 843, that state laws, whether legislative or judicially created, that single out arbitration agreements for disfavored treatment, are preempted by the FAA.

■ Second, the case before the Alabama Supreme Court did not present the question answered by the sweeping statement in the lead opinion, since the contract in question was a negotiated agreement between sophisticated entities, not a contract of adhesion, and thus the announced rule must be mere dictum. Third, a majority of Justices, while concurring in the result of the case, did not join Justice Almon's lead opinion on this point. Fourth, because the sweeping statement offers no help as to what standard "meaningful choice" should be measured by, let alone why the movant should bear the burden of demonstrating that the nonmovant exercised it, the rule is too vague to be meaningfully applied. Fifth, similarly, since the principle says only that a court *"may* deny" a motion to compel arbitration, a court must still engage in a sensitive, fact-intensive inquiry into whether the agreement is unconscionable, as this court recommended in *Roberson*, to determine whether it *should* deny such a motion. So the rule adds nothing substantive and carves out no shortcuts. Sixth, whatever validity the concept of 'mutuality of remedy,' as opposed to mutuality of obligation, may hold in Alabama contract law, since arbitration is not a remedy, but a choice-of-forum in which to seek remedies (just as a jury trial is no more or less a remedy than a bench trial), the concept cannot possibly apply on the basis of non-transitivity of application of an arbitration clause, alone. This was the holding of the Alabama Supreme Court itself in *Isbell* (standardized arbitration clause that retains for one party

the option of using judicial or nonjudicial relief to enforce a security agreement or monetary obligations, or foreclose on the collateral, not unconscionable). 1997 WL 99725 at *8; *see also Ex Parte Gates,* 675 So.2d 371 (Ala.1996). Seventh, a contract of adhesion, in and of itself, is no sure evidence of unconscionability. As this court explained in *Roberson,*

> "Although courts sometimes speak loosely and equate adhesion contracts with unconscionable ones, the former term may refer simply to agreements in which one party has virtually no voice in the formulation of their terms and language. 1 Corbin on Contracts § 1.4 (Rev. Ed.1993). 'The contract of adhesion is a part of the fabric of our society. It should neither be praised nor denounced....' *Id.* That is because there are important advantages to its use despite its potential for abuse. These advantages include the fact that standardization of forms for contracts is a rational and economically efficient response to the rapidity of market transactions and the high costs of negotiations, and that the drafter can rationally calculate the costs and risks of performance, which contributes to rational pricing. *Id.*"

954 F.Supp. at 1526 n. 9, n. 10. Eighth and finally, while the installment sales contracts in this case contain a contract term that authorizes self-help upon buyer default, the arbitration agreements themselves are symmetrical and do not reserve to FMCC the right to litigate.

▮▮▮▮ This case is unlike *Lloyd,* which involved outright waivers of landlord liability for the commission of certain torts. The Goodwins and the Scotts have not argued that an arbitrator cannot hear liability claims against FMCC, or cannot award the full panoply of relief available in state courts under Alabama law.[5] Without such showings, the court cannot say that requiring them to make their case within an arbitral forum is inherently oppressive or unreasonably unfavorable. "A court must be wary of finding a

contract unconscionable where the plaintiff is 'left with some place to go,' *cf. Ex parte Merrill Lynch,* 494 So.2d at 4 ('plaintiff has failed to present this Court with any reasons why we should presume that an unjust result will necessarily occur [from being forced to use arbitrator of defendant's choice]'), because denial of a specific remedy or forum is substantively different from denial of any means of enforcement whatsoever. *In re Elkins–Dell Mfg. Co.,* 253 F.Supp. 864 (E.D.Pa.1966). Furthermore, [T]o prove unconscionability there must be a showing, not only that the terms of the contract are onerous, oppressive, or one-sided, but also that the terms bear no reasonable relation to the business risks.' *Id.* at 873." *Roberson,* 954 F.Supp. at 1526. The arbitration agreements FMCC seeks to enforce against the Goodwins and the Scotts are not unconscionable.

### C.

The Goodwins and the Scotts next argue that, even if the arbitration agreements would have been binding as to the dealers who signed them, they never agreed to arbitrate any disputes with FMCC.

▮▮▮▮ The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1255–56, 103 L.Ed.2d 488 (1989). "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit." *Id.* It is a cardinal principle of federal arbitration law that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4

---

**5.** The court therefore does not have before it whether a contract that not only requires the borrower to arbitrate any claim, while reserving for the lender the right to seek judicial remedies in the eventuality of default, but also restricts the borrower's range of relief in arbitration, is unconscionable.

L.Ed.2d 1409 (1960)). In making this determination, the court should apply ordinary state common law governing the formation of contracts, with due regard for the federal policy favoring arbitration. *Volt Info, Sciences,* 489 U.S. at 475–76, 109 S.Ct. at 1254; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63 & n. 9, 115 S.Ct. 1212, 1219 & n. 9, 131 L.Ed.2d 76 (1995). Under state common law of contracts as well, a party who has not agreed to do so may not be required to submit to arbitration. *AT & T Technologies,* 475 U.S. at 648, 106 S.Ct. at 1418; *Old Republic Ins. Co. v. Lanier,* 644 So.2d 1258, 1260 (Ala.1994). Beyond that, also as a general matter, one "who is not a party to a contract has no standing to compel arbitration." *Britton,* 4 F.3d 742 at 744; *Ex parte Stallings & Sons, Inc.,* 670 So.2d 861, 862 (Ala.1995).

Certain exceptions may apply where non-signatories, that is, persons or entities with whom no party to an arbitration agreement has manifestly agreed to arbitrate disputes, can obtain standing to compel signatories to arbitrate claims with them. *See, e.g., McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342 (11th Cir.1984) (equitable estoppel allows nonsignatory defendant to compel arbitration); *Sam Reisfeld & Son Import Company v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976) (nonsignatory defendants could stay judicial proceedings where charges against [signatory and nonsignatory] defendants were based on the same operative facts and were inherently inseparable); *See also J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320–21 (4th Cir.1988) (charges against parent company based on same facts as claim against subsidiary, with whom arbitration agreement is in effect, may be referred to arbitration also); *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir.1990) (nonsignatory defendant, as agent of signatory defendant, may compel arbitration); *Britton v. Co-op Banking Group,* 4 F.3d 742, 744 (9th Cir.1993); *Staples v. The Money Tree, Inc.,* 936 F.Supp. 856 (M.D.Ala.1996) (nonsignatory defendants could compel arbitration because signatory plaintiff's claims were founded on and intertwined with underlying contract obligations).

■ A nonparty seeking to compel a party to arbitrate "must first, as a threshold, establish grounds, in law or equity, why it should be permitted to assert rights under a contract to which it is NOT a party." *Roberson,* 954 F.Supp. at 1527.

The doctrine of equitable estoppel, exemplified by the *McBro* case, is one such ground. There, a manager and a contractor each had a contract with a hospital to work on a construction project. Both contracts contained arbitration clauses. A dispute broke out between the contractor and the manager, who had no contract between them. The court ruled that the dispute had to be arbitrated because the duties the contractor claimed were breached by the manager were duties that arose under the contractor's contract with the hospital. The assignment of duties under that contract was the basis for the lawsuit; thus the other conditions of the contract applicable to disputes, including the arbitration clause, had also to be given effect. The Eleventh Circuit stated that the dispute between the parties to the litigation was "intimately founded in and intertwined with the underlying contract obligations." *McBro,* 741 F.2d at 344 (quoting *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.,* 659 F.2d 836, 841 n. 9 (7th Cir.1981)). The scenario in *Hughes* was almost identical. "These decisions," the Eleventh Circuit Court of Appeals later wrote, "rest on the foundation that ultimately each party must rely on the terms of the written agreement in asserting their claims." *Sunkist Soft Drinks v. Sunkist Growers,* 10 F.3d 753, 757 (11th Cir.1993), *cert. denied,* 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994).

■ A party to an agreement can be equitably estopped from suing a nonsignatory in court when the very basis of the party's claim against the nonsignatory is that the nonsignatory breached the duties and responsibilities assigned to it by the party's agreement with the other signatory party, which agreement was governed by an arbitration clause. What is necessary is that the claim against the nonsignatory be inextricably bound up with the terms and duties of the contract the plaintiff has signed with the

other defendant. *See McBro*, 741 F.2d at 344.

In this case, the installment sales contracts between the Goodwins and the Scotts on the one hand, and the respective dealerships, on the other, contemplated assignment and delegation of the dealers' rights and obligations to FMCC immediately upon execution of the installment sales contracts. The arbitration agreements signed contemporaneously with the installment sales contracts explicitly refer to the very types of claims raised here:

> "Buyer/lessee and dealer agree that all . . . disputes . . . of every kind or nature that may arise between them concerning any of the negotiations leading to the sale . . . or financing of the vehicle, terms and provisions of the sale . . . arrangements for financing . . . purchase of extended warranties or service contracts . . . or any other aspects of the vehicle and its sale . . . or financing shall be settled by binding arbitration. . . . [I]t is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale . . . or financing . . . including disputes concerning the terms and conditions of the sale . . . or financing, . . . the terms and meaning of any of the documents signed or given in connection with the sale . . . or financing, any representations, promises or omissions made in connection with negotiations for the sale . . . or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing . . . and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle."

▮▮ Without reaching the question of whether FMCC should be considered a party to the arbitration agreement, stepping directly into the shoes of its dealers by virtue of the unrestricted assignment of the install-ment sales contracts to FMCC,[6] the court finds that since the very claims the Goodwins and the Scotts raise against FMCC arise from duties bound up with the terms and conditions of the installment sales contracts they executed with the dealers, they are equitably estopped from failing to arbitrate those claims with FMCC. Whatever duties of disclosure FMCC is supposed to have failed to abide by arose out of and through the contracts the Goodwins and the Scotts signed with the dealers. Without those installment sales contracts, there is no basis for these claims against FMCC.

For example, the Goodwins and the Scotts seek to hold FMCC liable for misrepresentations made in their installment sales contracts with the dealers. Such allegations, deriving from the installment sales contracts, are precisely what distinguish this case from *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530 (M.D.Ala.1997), where *"none* of the duties that Plaintiffs are claiming [the nonsignatory] breached arose under and were assigned to it by the sales agreements between the plaintiffs and [the vendor], which are the sole agreements governed by an arbitration clause." *Id.* at 1536 (emphasis added). The nonsignatory mobile home manufacturer in the *Waverlee* case had warranty obligations under law that were entirely independent of anything contained in the sales agreements between the buyers and seller, and it was upon those written and implied warranties that they were sued. All of the statutory and common law theories of injury advanced by the Goodwins and the Scotts against FMCC in this case arise or derive from certain provisions and factual statements within the installment sales contracts themselves, and thus all are equally, tightly intertwined with obligations and duties of the dealers arising under the installment sales contracts.

---

**6.** The arbitration agreements state that the parties agree to arbitrate disputes relating to "the terms and meaning of any of the documents signed or given in connection with the sale [or] financing." *See supra* note 2. Since the standard arbitration agreement itself is a document that accompanied the installment sales contracts, it is arguably covered by this clause. Thus, the Goodwins and the Scotts agreed to arbitrate disputes with the dealers about whether the terms and meaning of the arbitration agreement do or do not include disputes between themselves and the dealers' assignee. In theory, then, based on the same arguments of equitable estoppel and contract assignment, FMCC could have requested arbitration of the very question at issue here, instead of asking the court to decide it.

For that matter, the very idea that the installment sales contracts contemplate assignment of all of the dealers' rights and obligations to FMCC, but for the single exception of the right to arbitrate disputes, is without solid support. The arbitration agreements spell out the most likely, and even unlikely, eventualities in which FMCC might be drawn into a lawsuit, such as for "representations made in connection with the ... vehicle extended warranty or service contract purchased or obtained in connection with the vehicle," whereas, in *Waverlee,* the manufacturer hoped to swaddle itself in a blanket reference in an arbitration agreement to "disputes ... arising out of or in connection with" the sales contract, where there was not even an intimation in the agreement that it purported to cover the types of warranty claims that could be brought against the manufacturer.

■ Nor does the fact that some of the theories of recovery are based on federal statutes affect their arbitrability, either as against the dealers or FMCC. *See Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) ("duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights").

The fact that FMCC is not named as a party to the arbitration agreements does not prevent FMCC from arbitrating with the Goodwins and the Scotts, because, by alleging that FMCC is responsible for representations made in the installment sales contracts themselves, the Goodwins and the Scotts are equitably estopped from preventing FMCC from asserting the right to enforce the arbitration agreements executed conjointly with, and specifically with reference to, the installment sales contracts.

### III. CONCLUSION

The Goodwins and the Scotts are equitably estopped from preventing FMCC from enforcing the terms of the arbitration agreements they signed with automobile dealerships in Dothan, Alabama. Because the claims the Goodwins and the Scotts are asserting against FMCC are inextricably bound up with obligations created by and deriving from the execution of the installment sales contracts, FMCC has standing to compel them to abide by their agreements to arbitrate all claims pertaining thereto, despite being a nonsignatory. In addition, the arbitration agreements themselves are neither unreasonably unilateral nor unconscionable. The agreements are due to be enforced.