0921

Joseph B. ALALA, Jr., Respondent v. PEACHTREE PLANTATIONS, INC.,
J. Patrick Gavaghan, Pete Bailey, Jr., and Tony Corliss, Appellants.

(355 S. E. (2d) 286)

Court of Appeals

*Wallace A. Mullinax, Jr.,* and *James G. Johnson, III,* of *Horton, Drawdy, Ward & Johnson,* Greenville, *for appellants.*

*David A. White* and *Benjamin A. Johnson,* of *Roddey, Carpenter & White,* Rock Hill, *for respondent.*

Heard Jan. 27, 1987.

Decided April 6, 1987.

SANDERS, Chief Judge:

Respondent Joseph B. Alala, Jr. brought this suit for specific performance to require appellants Peachtree Plantations, Inc., J. Patrick Gavaghan, Pete Bailey, Jr. and Tony Corliss to purchase a certain tract of land from him and to pay certain costs incurred by him in connection with the tract and with this action. The trial judge granted Alala the relief which he sought. Peachtree, Gavaghan, Bailey and Corliss appeal. We affirm as modified.

Because this is a proceeding in equity, we have the authority to find the facts based on our own view of the preponderance of the evidence. *Butler v. Sea Pines Plantation Co.,* 282 S. C. 113, 317 S. E. (2d) 464 (Ct. App. 1984). However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a position to judge their credibility. *Mann v. Walker,* 285 S. C. 194, 328 S. E. (2d) 659 (Ct. App. 1985).

Alala is a lawyer practicing in Gastonia, North Carolina. Gavaghan, Bailey and Corliss are real estate developers doing business in South Carolina. Gavaghan and Bailey consulted Alala and his law firm for legal services and advice in connection with certain tax matters. Through a corporation which they controlled, Gavaghan, Bailey and Corliss thereafter contracted to purchase a tract of land consisting of 416 acres in York County. Using the services of the law firm, they formed Peachtree Plantations to acquire and develop the tract.

Alala became a participant in this venture personally by entering into a contract with Peachtree, Gavaghan, Bailey and Corliss which provided essentially as follows.

Alala agreed to purchase 100 of the 416 acres for a purchase price of $100,000. Peachtree, Gavaghan, Bailey and Corliss agreed to purchase the 100 acres from Alala within two years for an amount equal to the purchase price paid by him "plus any and all costs incurred by but not limited to interest, taxes (other than income), assessments, carrying charges, insurance and attorney's fees."

The parties further agreed that, if Peachtree, Gavaghan, Bailey and Corliss had not purchased the 100 acres from Alala within one year, he could elect to keep the property and release them from their obligation to purchase it.

Alala further agreed that he would exercise his best efforts to obtain a Federal Land Bank loan in the amount of $100,000, which Peachtree, Gavaghan, Bailey and Corliss could assume when they purchased the property from him.

Alala also agreed that if he were unable to obtain the loan from the Federal Land Bank he would cooperate with Peachtree, Gavaghan, Bailey and Corliss to obtain alternative financing.

The parties finally agreed that Alala or his assigns would receive twenty percent of the stock of Peachtree subject to certain terms and conditions not in issue here.

Alala purchased the 100 acres as he had agreed, but did not succeed in obtaining the Federal Land Bank loan. When he called on Peachtree, Gavaghan, Bailey and Corliss two years later to purchase the property from him, they refused to do so. This suit for specific performance followed.

## I

Peachtree, Gavaghan, Bailey and Corliss first argue that the trial judge erred in granting specific performance because Alala breached the contract by not using his best efforts to obtain the Federal Land Bank loan and by not promptly notifying them of his failure to obtain the loan. We address these arguments separately.

## A

Alala applied for the Federal Land Bank loan about nine

months after entering into the contract. An officer of the bank replied to him by letter requesting certain additional information regarding his plans for farming operations on the property. Alala determined from this request that he could not qualify for the loan because the property was intended for development, and there were no plans for farming it.

The trial judge found as a matter of law that Alala could not have qualified for a Federal Land Bank loan. We concur in this finding based on our own review of the evidence.

A portion of the Federal Land Bank Policy and Procedure Manual included in the record makes it clear that the bank will not extend credit on land purchased by an investor unless "the land is not being purchased for development within five years."

It is clear from the evidence that the parties contemplated development of the property in less than five years.

Furthermore, an officer of the Federal Land Bank testified that, if the bank had known of the agreement requiring Peachtree, Gavaghan, Bailey and Corliss to purchase the property from Alala, he would not have qualified for a loan unless the articles of incorporation of Peachtree provided that it was organized to carry on farming.

"Equity will not require the doing of a futile task, nor foreclose the rights of a party from obtaining specific performance for failure to do something which in view of all the facts would have been useless." *Carmichael v. Dan Nance Corp.*, 274 S. C. 357, 361, 264 S. E. (2d) 601, 603 (1980).

Since any further effort which Alala might have made to obtain the Federal Land Bank loan would have been futile, the fact that he made no effort to obtain it after receiving the letter from the officer of the bank is of no consequence.

B

Within a year after the contract was entered into, Alala notified Gavaghan orally that he was not eligible for the Federal Land Bank loan and confirmed this fact in writing about a year after that when he called on Peachtree, Gavaghan, Bailey and Corliss to purchase the property from him.

The contract contains no provision requiring Alala to give Peachtree, Gavaghan, Bailey and Corliss any particular notice regarding the Federal Land Bank loan, and we decline to read any such provision into it. Moreover, there is no evidence that Peachtree, Gavaghan, Bailey and Corliss were prejudiced in any way by not having received more timely notice.

Therefore, the fact that Alala did not notify Peachtree, Gavaghan, Bailey and Corliss more promptly of his failure to obtain the loan is also of no consequence.

## II

Peachtree, Gavaghan, Bailey and Corliss also argue that the contract should not be enforced because it is not fair, just and equitable when considered in light of the relationship of the parties. They contend that they considered Alala to be their lawyer and he took advantage of the trust which they placed in him.

It is undisputed that Alala had acted as a lawyer for Peachtree, Gavaghan, Bailey and Corliss prior to entering into the contract with them. When a lawyer deals with his client, the burden is on the lawyer to show fairness. *Jacobsen v. National Bank of Austin.* 65 Ill. App. (3d) 455, 21 Ill. Dec. 913, 382 N. E. (2d) 277 (1978). There is, however, no absolute prohibition against a lawyer entering into a business transaction with his client. *See* S. C. Sup. Ct. R. 32, DR 5-104(A) (Supp. 1986) ("A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.").

We are convinced from our review of the evidence that there was no conflict between the interests of Alala and those of Peachtree, Gavaghan, Bailey and Corliss. Likewise, we find that Peachtree, Gavaghan, Bailey and Corliss did not expect Alala to exercise his professional judgment as to the terms of the contract. Rather, they approached him seeking his financial participation. Bailey initially proposed the essential terms of the contract to Alala and thereafter negotiated its terms with him on behalf of himself, Peachtree, Gavaghan and Corliss. The

$100,000 paid by Alala for the 100 acres provided all of the cash necessary to close the purchase of the entire 416 acre tract with no financial contribution from any of the other parties.

Furthermore, Gavaghan, Bailey and Corliss all have college educations and substantial experience in real estate contracts and developments, and there is no evidence that the contract was unconscionable or the result of their being overreached or subjected to undue influence.

For these reasons, we reject the argument of Peachtree, Gavaghan, Bailey and Corliss on this point.

## III

Peachtree, Gavaghan, Bailey and Corliss further argue that the trial judge erred in granting specific performance of the contract because it lacked mutuality. The principle of mutuality encompasses two separate concepts, mutuality of remedy and mutuality of obligation. We address these concepts separately.

## A

Early decisions by some courts recognized a rule requiring mutuality of remedy, refusing to order specific performance where the remedy is not available against the party seeking it. *See* 81 C. J. S. *Specific Performance* Section 12 at 720-26 (1977). However, our Supreme Court appears to have rejected this rule in *Columbia Water Power Co. v. City of Columbia,* 5 S. C. 226 (1873). We are aware of no case decided since then in South Carolina recognizing the rule, and no such case has been called to our attention. This is in accord with the modern view that mutuality of remedy is not a requirement for the granting of specific performance. *See Morad v. Silva,* 331 Mass. 94, 98, 117 N. E. (2d) 290, 292-93 (1954) ("The doctrine that there must be mutuality of remedy at the time the contract is entered into or specific performance will be denied has been much criticized and the great weight of modern authority has repudiated it."); *Epstein v. Gluckin,* 233 N. Y. 490, 493, 135 N. E. 861, 862 (1922) (Justice Cardozo: the rule requiring mutuality of remedy as a condition of equitable relief "has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule today.").

## B

Of course, all parties must be obligated under a contract in order for it to be enforceable. 1A A. L. CORBIN, CORBIN ON CONTRACTS § 152 (1963); 1 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 105A (3d ed. 1957). *See Humble Oil & Refining Co. v. DeLoache,* 297 F. Supp. 647, 658 (D. S. C. 1969) (Judge Russell: "In the law of contracts, mutuality, both in definition and application, is largely synonymous with consideration."). It is clear that Alala as well as Peachtree, Gavaghan, Bailey and Corliss was obligated under the contract in the instant case (*e.g.,* Alala was obligated to purchase the 100 acres immediately; Peachtree, Gavaghan, Bailey and Corliss were obligated to purchase the property from him within two years). The fact that Alala performed his obligations and acquired the option of releasing Peachtree, Gavaghan, Bailey and Corliss from their obligation after one year does not preclude him from seeking specific performance. If we were to hold otherwise, no contract which provided for an option would be enforceable by specific performance.

## IV

Peachtree, Gavaghan, Bailey and Corliss next argue that the trial judge erred in awarding Alala any costs incurred by him in connection with the property after determining that he was ineligible for the Federal Land Bank loan because he did nothing to minimize his damages.

"[A] party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced." *Tri-Continental Leasing Corp. v. Stevens, Stevens & Thomas, P.A.,* 287 S. C. 338, 342, 338 S. E. (2d) 343, 346 (Ct. App. 1985).

There is no evidence that Alala could have done anything to minimize his damages. For this reason, we hold that Peachtree, Gavaghan, Bailey and Corliss did not meet their burden of proof on this point.

## V

Peachtree, Gavaghan, Bailey and Corliss finally argue that the trial judge erred in requiring them to pay the attorney fees which Alala incurred in his suit for

specific performance. They argue in essence that the provision of the contract which requires them to purchase the 100 acres from Alala for the purchase price which he paid plus the costs incurred by him should be construed to require them to pay only his costs in acquiring and holding the property. Alala argues, on the other hand, that Peachtree, Gavaghan, Bailey and Corliss should also pay the costs which he incurred for attorney fees in bringing suit against them.

The provision in question was obviously included in the contract for the benefit of Alala. "[A] provision of a contract which does not clearly express the intention of the parties should be construed against the one for whose benefit it was inserted." *Tuten v. Bowden,* 173 S. C. 256, 263, 175 S. E. 510, 513 (1934). Strictly construed against Alala, the costs which the contract requires Peachtree, Gavaghan, Bailey and Corliss to pay do not include his attorney fees for bringing suit to enforce it.

We are influenced in reaching this result by a proposed amendment to the contract which was drafted by Alala. This amendment specifically provided that the costs incurred by Alala would include attorney fees "in connection with the enforcement of the buyers' obligation hereunder." This proposed amendment was rejected by Peachtree, Gavaghan, Bailey and Corliss and never became a part of the contract.

For these reasons, we modify the order of the trial judge so as to delete that portion which requires Peachtree, Gavaghan, Bailey and Corliss to pay the attorney fees of Alala in bringing suit to enforce the contract.

Accordingly, the order of the trial judge is

Affirmed as modified.

CURETON and GOOLSBY, JJ., concur.