498 S.E.2d 898

**Daniel B. LACKEY, George Buggs, Florine Buggs, Michael Highsmith, and Paula Johnson, Respondents,**

v.

**GREEN TREE FINANCIAL CORP., Appellant.**

**No. 2810.**

Court of Appeals of South Carolina.

Submitted Dec. 2, 1997.

Decided March 16, 1998.

390

Herbert W. Hamilton, of Kennedy, Covington, Lobdell & Hickman, Rock Hill, for appellant.

Bradford Simpson, of Simpson, Dong & Wingate; John D. Kassel and Kenneth M. Suggs, both of Suggs & Kelly, Columbia; Daniel W. Williams, of Bedingfield & Williams, Barnwell, for respondents.

HOWARD, Judge:

Green Tree Financial Corp. (Green Tree) appeals from a final order finding the arbitration clause in its form contracts to be unconscionable and therefore unenforceable. We reverse and remand for further proceedings.

## FACTS

The Respondents each entered into retail installment contracts and security agreements which obligated them to make monthly payments to Green Tree for the purchase of manufactured homes or improvements to manufactured homes. In each instance, the contract forms were provided to manufactured home dealers by Green Tree. When a dealer accepted the terms by signing a contract, the signature also assigned the dealer's rights in the contract to Green Tree. Under these agreements, Green Tree held a security interest in real or personal property owned by each respondent.

The agreements contained an arbitration clause on the reverse side of the form contract. Although the arbitration clauses vary slightly, the parties agree they each contain essentially the following language: [1]

All disputes, claims, or controversies arising from or relating to this contract, or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by [Green Tree] with consent of Buyer[s]. This arbitration contract is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through court but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO COURT ACTION BY [GREEN TREE] AS PROVIDED HEREIN. The parties agree and understand that all disputes arising under case law, statutory law, and all other

---

1. The actual contracts vary in the words describing the parties. For example, some of the contracts employ the pronouns "we", "us", and "you", while others refer to the parties as "buyer" and "assignee". At least one contract specifically includes an agreement to arbitrate the validity of the contract and the arbitration clause.

laws including, but not limited to all contract, tort, and property disputes, will be subject to binding arbitration in accord with this contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the contract. These powers shall include all legal and equitable remedies, including, but not limited to, monetary damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, [Green Tree] retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the manufactured home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligations secured by the manufactured home or to foreclose on the manufactured home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment, or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in the contract, including the filing of a counterclaim in a suit brought by [Green Tree] pursuant to this provision.

The Respondents brought this class action suit, alleging Green Tree had failed to "inform them of their right to be represented by legal counsel of their choice and to ascertain the preferences as to legal counsel in closing the particular transactions described herein...." Green Tree responded with a motion to stay and to compel arbitration.

The trial court denied the motion, concluding the arbitration clause was unconscionable based on its unbalanced terms, which the court found to be a contract of adhesion. The court also ruled the arbitration clause was unenforceable because it lacked mutuality, since Green Tree was not obligated to arbitrate all of its claims, though the Respondents were. The trial court found it unnecessary to rule on the other issues presented. Green Tree appeals these rulings.

## SCOPE OF REVIEW

The validity of an arbitration clause which is attacked on the grounds of unconscionability raises a question of

law. S.C.Code Ann. § 36–2–302 (1976). In an action at law, the appellate court's jurisdiction is limited to the correction of errors of law and factual findings which are unsupported by any evidence. *Rose v. Beasley,* 327 S.C. 197, 489 S.E.2d 625 (1997) (citing *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976)).

## *LAW/ANALYSIS*

### I. Adhesion Contract

 The trial court first concluded the contracts were contracts of adhesion. Green Tree disputes this finding, but we agree with the trial court.

South Carolina case law has yet to specifically define an adhesion contract, although several cases refer to them in an insurance setting. *See Fireman's Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 295 S.C. 538, 370 S.E.2d 85 (1988); *Wolf v. Colonial Life & Accident Ins. Co.,* 309 S.C. 100, 420 S.E.2d 217 (Ct.App.1992). The federal district court applying South Carolina law recently stated the following definition, "[A] contract of adhesion is generally thought of as a standard form contract offered on a 'take-it-or-leave-it' basis. The terms of the contract of adhesion are not negotiable. An offeree faced with such a contract has two choices: complete adherence or outright rejection." *Wingard v. Exxon Co.,* 819 F.Supp. 497, 503 (D.S.C.1992) (citing E. Allen Farnsworth, *Contracts* § 4.26 at 295 (1982)). We conclude this definition properly describes a contract of adhesion. *See 1 Corbin on Contracts* § 1.4 (rev. ed. 1993) (recognizing adhesion contracts as agreements in which one party has virtually no voice in the formulation of their terms and language).

Applying this definition, each contract in this case was an adhesion contract. Each was a standard form contract presented on a "take it or leave it" basis. The Respondents did not contribute to the drafting. They obviously did not possess the same bargaining power as Green Tree. Had they not signed, they would not have received the financing they sought from Green Tree.

## II. Unconscionability

The fact that a contract is one of adhesion does not make it unconscionable. *See Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007, 1015 (M.D.Ala.1997). Determining whether a contract is one of adhesion is merely the beginning point in the analysis. Unconscionability, on the other hand, requires a greater showing. Unconscionability is characterized by the "absence of meaningful choice on the part of one party due to one-sided contract provisions, *together with* terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac-Cadillac-Buick Inc.*, 322 S.C. 399, 402, 472 S.E.2d 242, 245 (1996) (emphasis added) (citing *Jones Leasing v. Gene Phillips and Assocs.*, 282 S.C. 327, 318 S.E.2d 31 (Ct.App.1984)).

The issues raised in this case have not been thoroughly addressed in this state before. The federal district court in Alabama addressed the same issues presented here and discussed them in depth in *Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007 (M.D.Ala.1997). In *Goodwin*, car buyers brought a class action against Ford Motor Credit alleging violations of the federal Truth in Lending Act and state consumer protection laws. Each of the car buyers signed an installment sales contract together with a separate arbitration agreement. Both were standardized forms produced by Ford Motor Credit. Once the car buyers brought the class action, Ford Motor Credit filed demands for arbitration. The car buyers answered that the arbitration agreement should not be enforced because it was unconscionable and lacked mutuality. The federal court carefully and thoroughly addressed these issues. We agree with that court's reasoning and decision and refer to it throughout this opinion.

Form contracts obviously serve a very useful purpose in commerce. The benefits of adhesion contracts are succinctly described in *Goodwin:*

"The contract of adhesion is a part of the fabric of our society. It should neither be praised nor denounced...." That is because there are important advantages to its use despite its potential for abuse. These advantages include the fact that standardization of forms for contracts is a

rational and economically efficient response to the rapidity of market transactions and the high costs of negotiations, and that the drafter can rationally calculate the costs and risks of performance, which contributes to rational pricing. *Id.* at 1015 (citing 1 *Corbin on Contracts* § 1.4 (rev. ed. 1993)). Thus, the conclusion that the agreements in this case are adhesion contracts does not render them unenforceable.

Green Tree argues that the trial court erred in finding the arbitration clauses unconscionable. We agree.

 The arbitration clauses in the contracts between Green Tree and Respondents are governed by the Federal Arbitration Act (FAA) because, as the parties stipulate, they each represent a transaction in commerce. The Federal Arbitration Act supersedes the common law of South Carolina. *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 239 S.E.2d 647 (1977). The FAA provides as follows:

[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1970). The word "involving" in reference to commerce is broad and is the functional equivalent of "affecting" commerce. *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

Through the FAA, Congress endorsed arbitration as a less formal and more efficient means than litigation of resolving disputes. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273 (4th Cir.1997). The FAA represents "a liberal federal policy favoring arbitration agreements." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). The Supreme Court has repeatedly emphasized that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability...." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.* at 626, 105 S.Ct. at 3354.

In construing an arbitration clause, the Supreme Court has also made it clear that states may not treat arbitration clauses differently from other contract provisions. "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (emphasis added); *see Soil Remediation v. Nu–Way Envtl.,* 323 S.C. 454, 476 S.E.2d 149 (1996). A contract, or a clause of a contract, may be attacked at law if it was unconscionable at the time it was made. S.C.Code Ann. § 36–2–302 (1976). If the court finds that a contract clause was unconscionable at the time it was made, the court may refuse to enforce the contract clause or limit the application of the unconscionable clause to avoid any unconscionable result. *Id.*

The trial court concluded the adhesion contracts were unconscionable for essentially three reasons. First, the court found that the failure to notify the respondents of their right to have their own legal counsel for the closing of their loans effectively prevented them from consulting an attorney. The court ruled that the contracts failed to contain the "requisite notice" as required by the South Carolina Consumer Protection Code, S.C.Code Ann. § 37–10–102 (Supp.1997).

Second, the court ruled that the right of Green Tree to select the arbitrator contained within the agreement, subject only to a veto power by the contracting respondent, provided only a "hollow right." Under this selection process the court reasoned there was no requirement that the arbitrator be

unaffiliated with Green Tree or truly neutral. The court concluded this term in the clause was so oppressive that no reasonable person would make it, and no fair and honest person would accept it. *See Jones Leasing v. Gene Phillips and Assoc.*, 282 S.C. 327, 318 S.E.2d 31 (Ct.App.1984).

Third, the court reasoned that because Green Tree reserved the right to enforce the security agreements and monetary obligations in the court through a contract action or a foreclosure proceeding, the arbitration clause was "biased" toward Green Tree in the selection of forums. Based upon these findings, the court concluded the arbitration clause was unconscionable, and thus, unenforceable. We will address each of these conclusions in the order in which they appear above.

## A. Notice of Right to Counsel

■ The claims asserted against Green Tree are premised on a failure to comply with the South Carolina Consumer Protection Code, which requires a creditor to ascertain the preference of the borrower as to legal counsel to close the transaction in certain circumstances. This obligation is found in S.C.Code Ann. § 37–10–102 (Supp.1997). The applicability of this provision is disputed by Green Tree.[2] The trial court's initial basis for concluding the contract was unconscionable is that Green Tree failed to comply with this section, which the court ruled was tantamount to denying each buyer the right to consult counsel. The first flaw in this reasoning is that it assumes the applicability of this section, a matter which is not yet decided. *See Lawrence v. Comprehensive Bus. Serv. Co.*, 833 F.2d 1159, 1162 (5th Cir.1987).

In reaching this conclusion, the trial court relied upon dicta found in *First Baptist Church of Timmonsville v. George A. Creed & Son, Inc.*, 276 S.C. 597, 281 S.E.2d 121 (1981). In that case the church entered into a contract which incorporated another document by reference. The incorporated document included an arbitration clause which no representative of the church had read, except the architect. Applying settled contract principles, the supreme court held that a contract arbitration clause is enforceable absent "fraud, mistake, unfair

---

**2.** At least two of the contracts arose through transactions occurring in Georgia.

dealing or the like." *Id.* at 599, 281 S.E.2d at 123. This is consistent with the United States Supreme Court's ruling in *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), which precludes the States from singling out arbitration clauses for unfavorable treatment.

Our supreme court concluded the failure of church representatives to read the entire contract was not a basis for setting aside the arbitration clause. *First Baptist Church of Timmonsville v. George A. Creed & Son, Inc.,* 276 S.C. 597, 599, 281 S.E.2d 121, 123 (1981). In passing, the court noted that nothing in the contract prevented the church from consulting a lawyer. *Id.* at 600, 281 S.E.2d at 123.

Contrary to the holding of the trial court in this case, we do not read *First Baptist Church of Timmonsville* to establish a bright line test rendering an arbitration clause unenforceable where a contract somehow prevents a party from consulting a lawyer. But even if it did, there is nothing in the contract which prevented respondents from consulting legal counsel.

## B. Selection of Arbitrator

The arbitration clause states that the arbitrator is to be selected by Green Tree with the consent of the respondents. The trial court found this to be unconscionable because the "veto" power of the respondents was a "hollow right". We disagree.

This conclusion ignores the provisions contained in the FAA, which are incorporated by reference into the contract. The FAA provides in applicable part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if . . . a method be provided and any party thereto shall fail to avail himself of such method, *or if for any other reason there shall be a lapse in the naming of an arbitrator* . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator. . . .

9 U.S.C. § 5 (1970) (emphasis added).

Under this provision, the respondents are protected because the clear language of the agreement allows them to block Green Tree's selection of arbitrators by simply disagreeing

with it. Without their agreement, no arbitrator can be selected by Green Tree. Under the default provisions of the FAA, a court then makes the selection of an impartial arbitrator upon application of either party. There is nothing inherently unfair or oppressive about this process. Contrary to the finding of the trial court, the "veto" power held by respondents provides enough control over the selection process to assure the appointment of a neutral arbitrator.

### C. Mutuality of Forum Selection

The trial court next concluded that the arbitration clause was biased in favor of Green Tree because it allowed them to choose a judicial forum while denying the respondents the right to "bring a counterclaim" to any such legal action. The court concluded that the respondents would be injured by this "lack of mutuality" if arbitration was compelled.

Whether the trial court was referring to mutuality of remedy or of obligation is uncertain. Clearly, however, consideration flowed to each party to the contract, and thus, mutuality of obligation existed. *See Alala v. Peachtree Plantations, Inc.*, 292 S.C. 160, 355 S.E.2d 286 (Ct.App.1987). We interpret the trial court's ruling to be that mutuality of remedy was required, *i.e.*, the consideration given for one party's obligation to arbitrate must be the other party's obligation to arbitrate.

We first note that the clause does not prevent the respondents from asserting a counterclaim in a judicial action allowed under the clause. It merely provides that any such counterclaim is subject to arbitration. Congress has endorsed arbitration as a less formal, more efficient means of resolving disputes than litigation. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273 (4th Cir.1997) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

Therefore, where the contract is subject to the FAA, this court must defer to that legislative policy and may not view arbitration as an inherently less beneficial form of dispute resolution. Furthermore, the respondents have failed to demonstrate that they are unable to get the same relief in

arbitration which is available in a judicial setting.[3] *See Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007, 1015 (M.D.Ala.1997). We conclude that a party desiring to avoid an arbitration clause on the grounds that no reasonable person would have agreed to it merely because it precludes judicial remedies must demonstrate how he or she has been prejudiced by compelled arbitration. This requires, at the least, identification of judicial relief not available in arbitration.

■ The trial court's conclusion also ignores the realities of business risks. Green Tree retained the option to use judicial or non-judicial relief to enforce a security agreement relating to the manufactured home, to enforce the monetary obligations secured by the manufactured home, or to foreclose on the manufactured home. Secured transactions allow lenders to take greater risks because their ability to protect a loan is enhanced by the legal right to recover and sell the collateral in the event of default. Judicial remedies for the recovery of property, such as the replevin action,[4] and the foreclosure action, provide specific procedures for protection of collateral and the parties during the pendency of the proceedings. These protections relate to both parties, and are facilitated by the enforcement procedures specified in the law. Thus, we conclude this clause does bear a reasonable relationship to the business risks. *See Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007, 1015 (M.D.Ala.1997).

Rejection of a rule requiring mutuality of remedy in a contract was most recently reaffirmed by our court in *Alala v. Peachtree Plantations, Inc.*, 292 S.C. 160, 355 S.E.2d 286 (Ct.App.1987). "Early decisions by some courts recognized a rule requiring mutuality of remedy, refusing to order specific performance where the remedy is not available against the party seeking it. However, our Supreme Court appears to

---

**3.** Of course, the arbitrability of counterclaims in a judicial action to foreclose or recover possession of personal property does not adversely affect the protections judicially afforded the parties in such proceedings, such as appraisal rights in real estate foreclosure proceedings or the requirement that collateral be sold in a commercially reasonable manner under the Uniform Commercial Code. Nor do the respondents advance such an argument.

**4.** In South Carolina, the replevin action is codified in S.C.Code Ann. § 15–69–10 (1976).

have rejected this rule in *Columbia Water Power Co. v. City of Columbia*, 5 S.C. 226 [388] (1873)." *Id.* at 166, 355 S.E.2d at 288 (citations omitted). This rejection of mutuality of remedy is in accord with the RESTATEMENT (SECOND) OF CONTRACTS, which recognizes the fact that one party is not allowed specific performance or an injunction is not a sufficient reason to refuse it to the other party. RESTATEMENT (SECOND) OF CONTRACTS § 363 cmt. c (1981); *see also Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007 (M.D.Ala.1997); RESTATEMENT (SECOND) OF CONTRACTS § 79 (1979) ("[i]f the requirement of consideration is met, there is no additional requirement of ... 'mutuality of obligation.' "); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438 (2d Cir.1995).

■ Therefore, there is no requirement that the consideration for one party's obligation to arbitrate all issues under a contract be the other party's obligation to arbitrate all issues under that contract.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's finding of unconscionability and remand the case for further proceedings.

**REVERSED AND REMANDED.**

HOWELL and CURETON, JJ., concur.