# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jane Doe, an adult woman over the age of 18,
Respondent,

v.

TCSC, LLC, d/b/a Hendrick Toyota of North Charleston,
Appellant.

Appellate Case No. 2017-001216

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

Opinion No. 5733
Heard November 13, 2019 – Filed July 1, 2020

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Edward D. Buckley, Jr., Stephen Lynwood Brown,
Russell Grainger Hines, and Nicholas James Rivera, all
of Young Clement Rivers, of Charleston, for Appellant.

Mark A. Mason and Anthony Edward Forsberg, both of
The Mason Law Firm, PA, of Mount Pleasant, for
Respondent.

**HILL, J.:** When Jane Doe bought a new car in 2011 from Appellant TCSC, LLC,
d/b/a Hendrick Toyota of North Charleston (Dealer), like most every consumer she
signed a sheaf of documents to close the sale. One of these documents was a one
page Arbitration Agreement. Four and one-half years later, Doe returned to the

dealership to have the car serviced. She also spoke with a salesman about trading in her 2011 car for a new one. Despite the salesman's persistent pitches, Doe decided to buy elsewhere. The rebuffed salesman, for reasons known only to him, sought revenge by posting an ad posing as Doe on a sexually explicit website, together with Doe's contact information. Minutes later, Doe began receiving strange telephone calls and text messages, some of which were sexually suggestive. An investigation linked the harassment to the ad the salesman had placed. Doe brought this lawsuit against Dealer, alleging an array of torts based on *respondeat superior*.

Dealer moved to compel arbitration of Doe's claims, based on the Agreement, specifically the following sentence:

> Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase, lease, or condition of this vehicle, your purchase, lease agreement, or financing contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase, lease agreement, or financing contract) shall at your or our election, be resolved by neutral, binding arbitration and not by a court action.

The circuit court denied the motion, finding the Agreement unconscionable. Dealer appealed. The question now before us is whether the parties intended for the court or an arbitrator to decide the threshold issue of whether the Agreement is valid and enforceable. Based on the parties' intent and the mandate of the Federal Arbitration Act (FAA) requiring courts to honor parties' valid contractual choices, we conclude the issue is for the court. We further affirm the trial court's finding of unconscionability, but on different grounds and only as to a portion of the Agreement. We sever that portion, and hold the issue of whether Doe's dispute is covered by the revised Agreement is for an arbitrator, as the parties clearly and unmistakably delegated the issue of the interpretation and scope of the Agreement to an arbitrator.

I.

A. The FAA

Due to the strong South Carolina and federal policy favoring arbitration, arbitration agreements are presumed valid. *See Cape Romain Contractors, Inc. v. Wando E., LLC*, 405 S.C. 115, 125, 747 S.E.2d 461, 466 (2013). We review circuit court determinations of arbitrability *de novo*, but will not reverse a circuit court's factual findings reasonably supported by the evidence. *Parsons v. John Wieland Homes & Neighborhoods of the Carolinas, Inc*., 418 S.C. 1, 6, 791 S.E.2d 128, 130 (2016). The parties agree the contract is governed by the FAA, the relevant portion of which states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2018).

Because an arbitration provision is often one of many provisions in a contract covering many other aspects of the transaction, the first task of a court is to separate the arbitration provision from the rest of the contract. This may seem odd, but it is the law, known as the *Prima Paint* doctrine. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (arbitrator rather than court must decide claim that underlying contract in which arbitration provision was contained was fraudulently induced; but if fraudulent inducement claim went to the arbitration provision specifically, claim would be for court because such a claim goes to the "making" of the arbitration agreement and § 4 requires the court to "order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration . . . is not in issue'"). Here, though, the arbitration provision is the entire contract, so we cut to the next question: whether the contract constitutes a valid agreement to arbitrate. Because the FAA does not require parties to arbitrate when they have not agreed to do so, the inquiry at this stage is twofold: whether a valid agreement exists and who the parties have deemed should make the validity determination.

The FAA presumes parties intend that the court, rather than an arbitrator, will decide "gateway" issues related to arbitration, including whether the arbitration agreement is valid and enforceable and whether it covers the parties' dispute. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties may, of course, delegate these gateway issues to an arbitrator as long as there is "clear and unmistakable" evidence of such delegation. *Id.* at 944–45; *Henry Schein, Inc. v.*

*Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). If such a delegation occurred, the court still retains the right and duty to determine whether the delegation is valid and enforceable as long as the party resisting arbitration has made a direct and discrete challenge to the validity and enforceability of the delegation clause specifically, rather than the arbitration agreement as a whole. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

According to Dealer, the parties clearly and unmistakably agreed to delegate the issue of the validity and enforceability of the arbitration provision to the arbitrator. Therefore, Dealer asserts, the court has no right to rule upon this gateway issue. We disagree. In the delegation clause here, the parties empowered the arbitrator to resolve only the limited gateway issues of "the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute." The parties did not delegate the decision of whether the Agreement was valid and enforceable. After all, one cannot "interpret" an invalid contract. This omission removes the Agreement from the reach of *Rent-A-Center*, which addressed a delegation clause giving the arbitrator the exclusive authority to resolve any dispute relating to the "enforceability" of the agreement "including . . . any claim that all or any part of this [a]greement is void or voidable." The Court held that unless a party focused its unconscionability challenge on the delegation clause itself (rather than the arbitration agreement generally), a court must treat the delegation clause "as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.

Consistent with *Rent-A-Center*, because it is clear and unmistakable the delegation clause committed disputes over the "interpretation and scope" of the Arbitration Agreement and issues of "arbitrability of the claim or dispute" to the arbitrator, the FAA requires us to honor that agreement and leave resolution of these discrete gateway issues to the arbitrator. But because the parties' delegation clause did not mention who decides the gateway validity and enforceability issues, we must honor the parties' choice to leave these to the court. Without an express delegation of these issues to the arbitrator, there is no delegation of them that § 2 requires the court to carry out. Instead, it remains for the court to decide whether the Agreement is valid. *See Schein*, 139 S. Ct. at 530 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Davis v. KB Home of S.C., Inc.*, 394 S.C. 116, 126, 713 S.E.2d 799, 804 (Ct. App. 2011) (where arbitration clause did not expressly submit issues relating to validity, existence, and scope of arbitration agreement to arbitrator, FAA reserved such gateway issues to court), *aff'd in part, vacated in part on other grounds*, Op. No. 27386 (S.C. Sup. Ct.

filed Jan. 29, 2014) (Shearouse Adv. Sh. No. 19 at 18).  This is consistent with § 4 of the FAA that a court may only order arbitration to proceed if it is satisfied the "making" of the arbitration agreement is not "in issue."

Arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."  *First Options*, 514 U.S. at 943.  *Rent-A-Center* classified delegation clauses as simply miniature arbitration agreements, "and the FAA operates on this additional arbitration agreement just as it does on any other."  561 U.S. at 70; *see also Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so.").  Put another way, the FAA does not allow a court to make parties delegate issues they have not agreed to delegate.  To read *Rent-A-Center* as Dealer does would mean an arbitration agreement containing any type of delegation clause invariably means the issue of the validity of the arbitration agreement is exclusively for the arbitrator to decide.  Such a reading mocks not only §§ 2 and 4, but the choice of the parties to *not* refer that gateway decision to an arbitrator.

Likewise, we cannot accept Dealer's argument that the appearance of the word "arbitrability" in the delegation clause is clear and unmistakable evidence that the parties intended the arbitrator determine the validity of the Agreement.  Had the delegation clause stated the arbitrator was to determine the "arbitrability" of the Agreement (rather than the dispute), we might agree the parties had agreed to delegate the issue of the validity and enforceability of the Agreement to the arbitrator.  But we would still not be able to find the delegation "clear and unmistakable," in part because the Court has assigned multiple meanings to the term "arbitrability," rendering its meaning ambiguous at best.  The term is not defined in the Agreement, nor does it even appear in the FAA.  It was defined, in a roundabout manner, in *Howsam v. Dean Witter Reynolds, Inc.*, which identified two gateway questions of "arbitrability" that courts must decide unless the parties have clearly and unmistakably agreed otherwise:  whether the parties are bound by a given arbitration clause, and "whether an arbitration clause *in a concededly binding contract* applies to a particular type of controversy."  537 U.S. 79 (2002) (emphasis added); *see also Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (noting courts assume parties intend that courts rather than arbitrator will decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.").  As we have held, the delegation clause here clearly and unmistakably referred this second arbitrability question to an arbitrator.  To conclude the mere presence of the word "arbitrability" referred both questions to the arbitrator

would require applying some type of implied delegation principle, rather than the controlling "clear and unmistakable" standard. *Rent-A-Center* did not hold a delegation clause that does not delegate the validity issue removes the court's ability to rule upon validity challenges to the arbitration agreement. 561 U.S. at 71 ("But that agreements to arbitrate are severable does not mean they are unassailable. If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4.").

Because we hold the parties did not expressly delegate the gateway issue of the validity of the Agreement to the arbitrator, we will now consider whether the Agreement is valid.

II.

A. <u>Validity of the Agreement under South Carolina contract law</u>

In deciding whether a valid, enforceable and irrevocable arbitration agreement exists, we apply general principles of state contract law. *First Options*, 514 U.S. at 944. In South Carolina, a "valid and enforceable contract requires a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 568, 578, 762 S.E.2d 696, 701 (2014). We find the parties here had a meeting of the minds as to the essential and material terms of the Arbitration Agreement. Although the Agreement is silent as to the material element of its duration, that merely made the contract terminable at will by either party upon reasonable notice to the other, and Doe gave no notice of termination. *See Childs v. City of Columbia*, 87 S.C. 566, 572, 70 S.E.2d 296, 298 (1911).

    i.      <u>Unconscionability</u>

But finding the parties minds met does not end our review because a contract may be invalid—and courts may properly refuse to enforce it—when it is unconscionable. A court may invalidate an arbitration clause based on defenses applicable to contracts generally, including unconscionability. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). To prove the arbitration provision unconscionable, Doe must show that (1) she lacked a meaningful choice as to whether to arbitrate because the Agreement's provisions were one-sided, and (2) the terms were so oppressive no reasonable person would make them and no fair and honest person would accept them. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24–25, 644 S.E.2d 663, 668 (2007). While we analyze both prongs, they invite

similar proof and often overlap, and "if more of one [prong] is present, then less of the other is required." *Farnsworth on Contracts* § 29.4 at 4-212 (2020-1 Supp.); *see Corbin on Contracts* § 29.4 at 388 (2002 ed.) (noting "most cases do not fall neatly" into categorical boxes). Unconscionability is gauged at the time the contract was made.

a. Meaningful choice of accepting contract terms

Determining whether Doe meaningfully chose to arbitrate involves sizing up "the fundamental fairness of the bargaining process." *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 49, 790 S.E.2d 1, 4 (2016). Accordingly,

> courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause.

*Simpson*, 373 S.C. at 25, 644 S.E.2d at 669. We also consider whether the parties were represented by independent counsel. *Smith*, 417 S.C. at 49, 790 S.E.2d at 4. The distinguished circuit judge made factual findings related to these factors, which we may only upset if they lack reasonable factual support. *Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 393–94, 498 S.E.2d 898, 901 (Ct. App. 1998).

"In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668–69 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). The *Hooters* decision struck down an arbitration clause because it incorporated rules so "warped" and void of due process that any arbitration under them would have been a "sham." *Simpson* cannot be interpreted, however, to mean an arbitration clause can never be unconscionable as long as it points to a neutral forum. To do so would be to apply South Carolina general unconscionability law differently in the arbitration context than in others. Such discrimination would run afoul of one of the prime directives of the FAA: that courts must place arbitration contracts on par with all other contracts. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006) (noting § 2 is "the FAA's substantive command that arbitration agreements be treated like all other contracts");

*Prima Paint*, 388 U.S. at 404 n.12 (FAA was passed "to make arbitration agreements as enforceable as other contracts, but not more so").

The circuit court found the Agreement unconscionable based on several aspects: it was an adhesion contract, it was foisted on Doe "hastily" on a "take it or leave it basis" amidst a transaction by a single consumer with an international automotive concern. Doe had no counsel and the injuries she alleges are far removed in time and space from the 2011 car sale. These findings of the circuit court are well anchored by the record. Our supreme court has recognized car sales contracts warrant not just acute scrutiny but "considerable skepticism," given the bargaining disadvantage a consumer faces once he sets foot on the lot, and the reality that car ownership is often a necessity in modern society (unless one wishes to remain on foot). *Simpson*, 373 S.C. at 27, 644 S.E.2d at 670. We are mindful *Herron v. Century BMW*, 395 S.C. 461, 719 S.E.2d 640 (2011), may have tempered *Simpson's* treatment of car sales contracts, but the non-negotiable Agreement here—while conspicuous—was still sprung on Doe along with a flurry of other closing documents. We therefore affirm the circuit court's conclusion that Doe had no meaningful choice in accepting the Agreement.

 b. <u>Unreasonable, oppressive, and one-sided terms</u>

We next look at the terms of the Agreement to see if they are so harsh and oppressive no reasonable person would offer or accept them. We find the portion of the contract purporting to require Doe to arbitrate "any claim or dispute" arising out of or relating to "any resulting transaction or relationship (including any such relationship with third parties)" is so overbearing as to be unconscionable. In essence, because the contract deems any future encounter between Doe and Dealer would be a result of their "relationship" created by the 2011 transaction, the Agreement bars each from suing the other in court for anything. Ever. The Agreement does not just memorialize the parties' promise to resolve disputes about the 2011 purchase transaction by arbitration but seeks to resolve all future disputes between them, regardless of its type or description, as well as any disputes with unknown "third parties." This lopsided provision places Doe at a stunning disadvantage—she is now one against many, for an objective reading of the Agreement means it forever immunizes not just Dealer, but Dealer's salesmen, employees, agents, suppliers, wholesalers, and any third party throughout the universe from being brought into the public judicial system by Doe.

This is corroborated by a later clause of the contract that declares "[t]his Arbitration Agreement shall survive any termination, payoff or transfer of your financing

contract."  This signals Doe's "relationship" with Dealer was inextricable and infinite.  The use of the expansive term "relationship" alerts us as to how far the Agreement has wandered outside the bounds of the FAA.  Congress passed the FAA to ensure enforcement of provisions contained in "maritime transaction[s]" or "contract[s] evidencing a transaction involving commerce" to arbitrate controversies that arise out of the "contract or transaction."  9 U.S.C.A. § 2.  Attempts to stuff every conceivable dispute the parties may ever have into the FAA on the notion that the initial transaction created a permanent "relationship"—regardless of whether the current  dispute has any connection to the initial, underlying transaction—runs the risk of a court declaring the contract's reach exceeds the grasp conscionability allows.

We conclude the following language of the Agreement—"or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase, lease agreement, or financing contract)"—is unconscionable.  An unconscionable contract is not a valid contract in the eyes of § 2.  *See Kindred Nursing Ctrs.*, 137 S. Ct. at 1426; *see also Doctor's Assoc.'s, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability").  Courts have discretion though to decide whether a contract is so infected with unconscionability that it must be scrapped entirely, or to sever the offending terms so the remainder may survive.  Once again, we are guided by the parties' intent.  *Columbia Architectural Grp., Inc. v. Barker*, 274 S.C. 639, 641, 266 S.E.2d 428, 429 (1980) ("The entirety or severability of a contract depends primarily upon the intent of the parties . . . .");  *see also Simpson*, 373 S.C. at 25, 644 S.E.2d at 668 ("If a court as a matter of law finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result.").  The Agreement here contains a severability clause, reflecting that if any part of the contract is found "unenforceable for any reason, the remainder shall remain enforceable." Given this intent and our belief that removing the unconscionable clause does not disrupt the core of the parties' bargain, we disagree with the circuit court that the entire Agreement must fall.

That brings us back to our earlier ruling that the delegation clause requires the arbitrator to rule on the "interpretation and scope" of the now revised Agreement, to see if it requires arbitration of Doe's claims.  Therefore, the arbitrator must decide whether Doe's claims against Dealer based on its employee's 2015 theft of Doe's identity and the posting of Doe's private contact information on a sexually explicit website arise out of or relate to Doe's "credit application, purchase . . . or condition

of" the car she bought from Dealer in 2011. We express no opinion on whether the 2011 arbitration contract covers Doe's claims, or, if so, whether the claims are still subject to arbitration due to the "outrageous and unforeseen torts" exception. *See generally Parsons*, 418 S.C. 1, 791 S.E.2d 128. The dissent argues this exception does apply, but whether the exception applies is a question the parties delegated to the arbitrator, not the court. Because the outrageous and unforeseen torts exception relates to the interpretation and scope of the arbitration contract and the arbitrability of the dispute—rather than whether the arbitration contract was formed or is valid—precedent requires that we honor the parties' choice to leave the issue of the exception to the arbitrator. *See Chassereau v. Global Sun Pools, Inc.*, 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007) (treating outrageous and unforeseen torts exception as a question of arbitrability of claim and noting, "*[u]nless the parties provide otherwise*, the question of the arbitrability of a claim is an issue for judicial determination" (emphasis added)). The Supreme Court clarified this point just last term. *Henry Schein, Inc.*, 139 S. Ct. at 527–28 ("Even when a contract delegates the arbitrability question to an arbitrator, some federal courts nonetheless will short-circuit the process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.' The question presented in this case is whether the 'wholly groundless' exception is consistent with the Federal Arbitration Act. We conclude that it is not."). The dissent's approach makes good sense and would likely streamline many motions to compel, but the United States Supreme Court has made clear that considerations of common sense and efficiency in this context are incompatible with their interpretations of the FAA.

Accordingly, we remand this matter to the circuit court so the motion to compel arbitration may be granted and the arbitrator can rule upon whether Doe's claims are subject to her 2011 arbitration contract with Dealer.

\* \* \*

The FAA became law in 1925, passed primarily to safeguard the rights of merchants to use arbitration to resolve disputes arising over interstate commercial transactions by reversing the judicial hostility against arbitration. *See generally Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); Bookman, *The Arbitration-Litigation Paradox*, 72 Vand. L. Rev. 1119, 1134 (2019). The FAA's early use was limited by the then narrow reach of the commerce clause, and the reality that the typical arbitration agreement of the time was between merchants of equal sophistication and bargaining power. *Id*.; *see also* Horton, *Arbitration About Arbitration*, 70 Stan. L. Rev. 363, 377–78 (2018). Today, arbitration agreements pop up in almost every

imaginable transaction, many for basic consumer goods.  As more and more transactions are conducted online, arbitration agreements are not presented face to face but digitally, in such forms as "browsewrap," "clickwrap," "scrollwrap," and "sign-on wrap."  As lawyers know, the progression of arbitration decisions from the United States Supreme Court has been a march towards greater and greater abstraction, steadily away from the concrete. This has undermined arbitration's laudable goals: to streamline dispute resolution by offering a simpler, faster, and cheaper forum. Some Justices have complained the Supreme Court's interpretations of the FAA are unfaithful to its original intent. *See, e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 283 (1995) (O'Connor, J., concurring) ("[O]ver the past decade, the Court has abandoned all pretense of ascertaining congressional intent with respect to the Federal Arbitration Act, building instead, case by case, an edifice of its own creation.").  It might also be contended the Supreme Court's arbitration jurisprudence is so removed from everyday understanding and contracting realities that it has created more litigation than it has diverted.  Lawyers and businesses have to draft arbitration provisions around complex analytical mazes. Motions to compel arbitration—once simple and straightforward—now require lawyers and judges to navigate one of the most nettlesome thickets of the law.  *Rent-A-Center*'s strict insistence on pinpoint pleadings revives the stifling formalism of the early 20th century that the FAA was created to avoid.  The dissent in *Rent-A-Center* (a 5-4 decision) noted the counter-intuitive approach, begun by *Prima Paint*, that requires courts to sever arbitration provisions from the rest of an allegedly invalid contract is so artificial that it "may be difficult for any lawyer—or any person—to accept."  561 U.S. at 87 (Stevens, J., dissenting).  The dissent likened the majority's extension of *Prima Paint*'s severability doctrine to delegation clauses embedded in the arbitration provision to "Russian nesting dolls."  *Id.* at 85.

We wonder whether interpretations of the FAA could be made simpler and clearer, so courts can help rather than hinder the FAA's mission of providing a simpler, faster, and cheaper alternative to litigation.  Otherwise, the skirmishing that marks arbitration motion practice will undoubtedly intensify, and parties will be stranded longer and longer in the costly purgatory between the domains of arbitration and court.


**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.

**KONDUROS, J., concurs.**

**LOCKEMY, C.J., dissenting:** I respectfully dissent and would find, as the circuit court did, that the outrageous and unforeseeable torts exception applies to Doe's claims, and I would therefore affirm the denial of the motion to compel arbitration.

In my view, it is unnecessary for an arbitrator to interpret the Agreement or determine whether the dispute falls within its scope because Doe did not agree to submit outrageous tort claims to arbitration. In *Aiken*, our supreme court held the plaintiff's "claims for unanticipated and unforeseeable tortious conduct by [the defendant's] employees [were] not within the scope of the arbitration agreement with [the defendant]." *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 151, 644 S.E.2d 705, 709 (2007). There, the court opined the theft of the plaintiff's personal information by the defendant's employees was "outrageous conduct" the plaintiff could not possibly have foreseen when he agreed to do business with the defendant. *Id.* The court therefore held that "in signing the agreement to arbitrate, [the plaintiff] could not possibly have been agreeing to provide an alternative forum for settling claims arising from this wholly unexpected tortious conduct." *Id.* The court stated that to "interpret an arbitration agreement to apply to actions completely outside the expectations of the parties would be inconsistent with th[e] goal" of promoting "the procurement of arbitration in a commercially reasonable manner." *Id.* at 152, 644 S.E.2d at 710.

The case at hand is analogous to that presented in *Aiken*. Here, an employee of the dealership misappropriated Doe's personal information for the employee's own, vengeful purpose. I do not believe a person signing a contract for the purchase of a vehicle from a dealership could have anticipated that the dealership's employee would later use her personal information to solicit unwanted sexual encounters on her behalf. I believe that under general contract principles requiring Doe to arbitrate the question of whether her claims fall within the scope of the Agreement when they plainly do not would be contrary to the effectuation of the parties' contractual expectations. *See id.* at 151, 644 S.E.2d at 709 ("Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings."); *cf. Parsons v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.*, 418 S.C. 1, 13–14, 791 S.E.2d 128, 134–35 (2016) (plurality opinion) (Hearn, J., concurring in part and dissenting in part) (stating "the outrageous and unforeseeable torts exception . . . embodies a generally applicable contract principle: effectuating the intent of the parties" and noting that "forcing parties to arbitrate behavior that they clearly did not contemplate upon entering the contract or arbitration agreement" would constitute an absurd result).

For the foregoing reasons, I respectfully dissent and would affirm the circuit court's denial of the motion to compel arbitration.