**John M. BROWN, Plaintiff,**

v.

**GREEN TREE SERVICES, LLC, and American Bankers Life Assurance Company of Florida, Defendants.**

**C.A. No. 2:06–2777–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 28, 2008.

James Kevin Holmes, Steinberg Law Firm, Charleston, SC, Mary Leigh Arnold,

Mary L. Arnold Law Office, Mt. Pleasant, SC, for Plaintiff.

Brian A. Calub, Jennifer L. Mallory, Brian P. Crotty, Nelson Mullins Riley and Scarborough, Columbia, SC, Merritt G. Abney, Nelson Mullins Riley and Scarborough, Charleston, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Defendant Green Tree Servicing, LLC's Motion to Compel Arbitration and Dismiss or Stay Action.[1] Plaintiff John M. Brown ("Plaintiff" or "Brown") has filed a Response in Opposition to Green Tree Servicing's motion. For the reasons set forth herein, Defendant Green Tree Servicing's motion is granted.

## *BACKGROUND*

On July 28, 1999, Plaintiff received an unsolicited phone call at his home from Green Tree Financial Servicing Corporation ("Green Tree I"). Green Tree I told Plaintiff that it could refinance his home and consolidate his debts, which would lower his monthly payments, and Plaintiff deposed he was told he could protect his family with credit life and disability insurance in the event of his death or disability during the term of the new loan. (Pl. Dep. 19:13–20:23; 103:5–103:24.) A few days later, a Green Tree I agent went to Plaintiff's home and discussed the terms of the loan. (Pl.'s Dep. 25:21–27:21.)

Closing was held on August 17, 1999, at Green Tree I's office. On that date, as part of a loan transaction with Green Tree Financial Servicing Corporation, Plaintiff executed a note in the amount of

---

1. In its motion, Green Tree Servicing, LLC, asserts that it has been incorrectly identified as "Green Tree Services, LLC." In this order, the court will refer to this Defendant as "Green Tree Servicing."

$60,295.81. The note indicated that interest on the unpaid principal was at a yearly rate of 11.290%, and it called for 239 payments of $587.46 per month. In addition, the note called for a "balloon payment" of $42,732.46, due on September 1, 2019. On page two of two, the note contained the following arbitration provision:

**9. ARBITRATION**

All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one arbitrator selected by Lender with Borrower's consent. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY LENDER (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. Borrower agrees that Borrower shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claims arising from or relating to this Agreement. The parties agree and understand that the arbitrator shall have all powers provided by law and the Agreement. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, Lender retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Agreement, including the filing of a counterclaim in a suit brought by Lender pursuant to this provision.

On May 31, 2003, Plaintiff was involved in a motor vehicle accident, and Plaintiff asserts he became totally and permanently disabled as a result of this accident. (Resp. in Opp'n at 5.) On July 8, 2003, Plaintiff filed a claim with Defendant American Bankers Life Assurance Company of Florida ("American Bankers"), the issuer of the disability policy at issue in this case. (Pl.'s Dep. 61:14–62:10; 120:21–120:25.) Although American Bankers originally paid disability benefits to Plaintiff, it stopped paying such benefits on September 22, 2006. Such payments stopped because while Plaintiff deposed that he was "led to believe" the insurance continued for the life of the loan, (Pl.'s

Dep. 27:17–27:20), the insurance in fact expired in September of 2006.

On October 5, 2006, Plaintiff brought suit against Green Tree Financial Servicing Corporation a/k/a Green Tree Services, LLC; Green Tree Insurance Agency; and American Health and Life Insurance Company d/b/a Assurant Group a/k/a American Bankers Life Assurance Company of Florida, listing causes of action for (1) breach of an insurance contract, (2) negligent misrepresentation, (3) bad faith, (4) conversion, (5) civil conspiracy, and (6) temporary and permanent restraining order. (*See* Compl.) It appears Plaintiff filed this suit because, among other things, he was concerned that he would lose his home.

On September 21, 2007, Plaintiff filed a Motion to Amend Complaint, and all defendants consented to such amendment. Accordingly, Plaintiff's Motion to Amend Complaint was granted, and an Amended Complaint was filed on October 16, 2007. The Amended Complaint listed two defendants, Green Tree Services, LLC, and American Bankers Life Assurance Company of Florida. (*See* Am. Compl.) The causes of action listed in the Amended Complaint are as follows: (1) breach of contract; (2) violation of Home Owners Equity Protection Act (HOEPA); (3) fraud; (4) constructive fraud; (5) breach of fiduciary duty; (6) negligent misrepresentation; (7) violation of the unfair trade practices act; (8) unconscionability; and (9) temporary and permanent restraining order. (*See* Am. Compl.) Thereafter, on November 9, 2007, Green Tree Servicing filed a Motion to Compel Arbitration and Dismiss or Stay Action, which Plaintiff opposes.[2]

2. The court notes that American Bankers is not a party to this motion and has not sought to compel arbitration.

## ANALYSIS

The parties agree that the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*, (*"FAA"*) governs this action. The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir.2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The Fourth Circuit has said that arbitration " 'should not be denied unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute.' " *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.1989) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

In the Fourth Circuit, arbitration is appropriate under the FAA if a litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th

Cir.1991); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir.2002). Even though arbitration is favored, "'there still must be an underlying agreement between the parties to arbitrate.'" *Adkins*, 303 F.3d at 501 (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir.1997)). State law governs the determination of whether a party agreed to arbitrate a particular dispute. *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); *see also Senior Mgmt., Inc. v. Capps*, 240 Fed.Appx. 550, 552–53 (4th Cir. 2007). The FAA also provides that a party "may seek revocation of a contract under 'such grounds as exist at law or in equity,' including fraud, duress, and unconscionability." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (quoting 9 U.S.C. § 2).

Green Tree Services seeks an order of this court compelling arbitration pursuant to 9 U.S.C. § 4, asserting (1) the FAA evidences a strong policy favoring arbitration; (2) even as a nonsignatory defendant, it can enforce this arbitration agreement; and (3) arbitration should be compelled because Plaintiff's claims fall within the scope of the arbitration agreement. (Mem. in Supp. at 4–9.) Plaintiff, on the other hand, argues that the court should not grant Green Tree Services' Motion to Compel Arbitration because (1) Plaintiff is entitled to a jury trial on the validity of the arbitration agreement; (2) there are genuine issues of fact regarding whether the "illiterate and unwary Plaintiff exercised a meaningful choice and agreed to arbitrate the dispute;" (3) the arbitration clause is unconscionable; and (4) Defendant Green Tree waived its right to seek arbitration. (Resp. in Opp'n at 6.) In its Reply, Green Tree Servicing argues, *inter alia*, that Plaintiff's challenge to the validity of the arbitration agreement is indistinguishable from a challenge to the validity of the note

as a whole and thus should be decided by an arbitrator. (Reply at 3.)

 Plaintiff's first main argument is that the court should not grant the Motion to Compel Arbitration because he is illiterate and unwary, such that he did not exercise a meaningful choice and agree to arbitrate. (Resp. in Opp'n at 8.) While arbitration is favored under the law, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America*, 363 U.S. at 582, 80 S.Ct. 1347. If a party is seeking to avoid arbitration by challenging the validity or enforceability of the arbitration provision, that party must state grounds which "'relate specifically to the arbitration clause and not just to the contract as a whole.'" *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 636 (4th Cir.2002) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir.1999)); *see also Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir.1989) (refusing to consider party's arguments that arbitration clause must be declared invalid on grounds that customer's agreement as a whole was invalid due to overreaching, unconscionability, fraud, and lack of consideration, because the alleged defects pertained to the entire contract, rather than specifically to the arbitration clause). This rule arises from the Supreme Court's opinion in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In *Prima Paint*, the Court held that if a claim of fraud in the inducement related to the arbitration clause itself, the federal court could adjudicate that claim. *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801. However, a claim of fraud in the inducement of the entire contract was held arbitrable under a broad arbitration clause. *Id.* at 403–04, 87 S.Ct. 1801. The Court stated,

Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue. Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue that goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.... We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

*Id.* at 403–04, 87 S.Ct. 1801.

■■■ Despite the holding in *Prima Paint,* which has come to be known as the severability doctrine, "the severability doctrine has been held not to apply when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision." *Snowden,* 290 F.3d at 637. The Fourth Circuit has stated, "The question of whether a valid agreement to arbitrate exists being an issue for the district court, the district court is required to decide the assent issue even though the issue goes to the making of the entire agreement." *Id.*

The United States District Court for the Western District of Virginia addressed an argument similar to Plaintiff's in *Dillow v. Household International Inc.,* No. 3:03CV00084, 2004 WL 5336055 (W.D.Va. Apr. 26, 2004). In *Dillow,* the plaintiffs argued the terms of the arbitration riders at issue did not apply because they were procured by fraud. *Dillow,* 2004 WL 5336055, at *1. The plaintiffs asserted the arbitration riders were invalid because Joe Dillow "asked a representative of Beneficial Mortgage Corporation to describe the documents he was signing, and that representative allegedly misrepresented the true nature of the Arbitration Riders." *Id.* at *2. Ruby Dillow, his wife, stated in an affidavit that they specifically asked what the documents were, and Beneficial told them "they were all just documents promising to repay the money to Beneficial." *Id.* The plaintiffs argued that this description related specifically to the arbitration clause but not the contract in general. *Id.* The court disagreed:

Though the Court has considered Joe Dillow's illiteracy, as well as all facts on the record surrounding the loan contracts, as a general principle, one who accepts a written agreement or contract is presumed to know and assent to its contents. In addition, it is hornbook law that one who signs a written contract will normally be bound by its terms and that ignorance of the terms will not ordinarily affect the liability of such person under the contract. Joe Dillow's illiteracy does not override this general principle. Additionally, Ruby Dillow, Joe's wife, is literate and was present when the loan documents were signed.

*Id.* (internal quotation marks and citations omitted) (applying Virginia law). The court further determined that the plaintiffs' claims of fraud related to the loan documents as a whole, as the alleged misstatement describes more than just the arbitration riders. *Id.* at *3. "The Court finds that the allegedly fraudulent mischaracterization by Defendants goes to the nature of the contract generally, and not solely to the Arbitration Riders. Accordingly, the impact of the alleged fraud is properly determined by the arbitrator." *Id.*

■ In the case *sub judice*, Plaintiff's arguments go to the contract as a whole. He is arguing the fact that he is illiterate precluded him from exercising a meaningful choice to arbitrate, but his illiteracy did not prevent him from only reading the arbitration clause. Furthermore, even though Plaintiff is illiterate, he is "bound to have the paper read to him before signing, just as a person who can read is bound to read it before signing." *Baldwin v. Postal Tel. Cable Co.,* 78 S.C. 419, 59 S.E. 67, 68 (1907); *see also Burwell v. S.C. Nat'l Bank,* 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986) (noting that "every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it"). Plaintiff deposed that he voluntarily signed the loan documents without having them read to him and that he chose not to ask anyone at the closing to read the documents to him. (Pl.'s Dep. 109:5–111:6.) The court acknowledges that Plaintiff is asserting that he was induced into entering this transaction because the Defendants misrepresented to him that he would have disability insurance during the entire term of the loan, when in fact he did not. (*See* Am. Compl. ¶¶ 51–59.) This assertion of fraud, however, has nothing to do with the arbitration agreement itself, and nowhere does Plaintiff allege or argue that a misrepresentation concerning the arbitration agreement caused him to enter into this contract. Plaintiff's assertion of fraud thus concerns the contract as a whole, putting it squarely within the holding of *Prima Paint* such that the dispute must be sent to arbitration. *See Burden v. Check Into Cash of Ky., LLC,* 267 F.3d 483, 491–92 (6th Cir.2001) (concluding the plaintiffs' claims did not survive *Prima Paint* because "no aspect of the claim concerns the arbitration agreements, separate from the loan agreements"); *see also Dillow,* 2004 WL 5336055.

■ Plaintiff's next argument is that this court should deny the Motion to Compel Arbitration because the arbitration clause is unconscionable. The Fourth Circuit has stated,

> Principles of equity may counsel for invalidation of an arbitration agreement if the grounds for revocation relate specifically to the arbitration clause. *Hooters of America v. Phillips,* 173 F.3d 933, 938 (4th Cir.1999). Unconscionability is a narrow doctrine whereby the challenged contract must be one which no reasonable person would enter into, and the "inequality must be so gross as to shock the conscience.'" *L & E Corp. v. Days Inns of America, Inc.,* 992 F.2d 55, 59 (4th Cir.1993) (quoting *Smith Bros.–McCleary–McClellan Co. v. Beresford,* 128 Va. 137, 104 S.E. 371, 382 (1920) (internal quotations omitted)). However, when claims allege unconscionability of the contract generally, these issues are determined by an arbitrator because the dispute pertains to the formation of the entire contract, rather than the arbitration agreement. *Coleman v. Prudential Bache Sec., Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986).

*Sydnor v. Conseco Fin. Servicing Corp.,* 252 F.3d 302, 305 (4th Cir.2001). In Hooters, the Fourth Circuit affirmed the district court's denial of Hooters' motion to compel arbitration, concluding that "Hooters materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." *Hooters of America,* 173 F.3d at 938. The rules required the employee to provide the company notice of her claim at the outset, but Hooters was not required to file any responsive pleadings or to notice its defenses. *Id.* The employee was to provide a list of fact witnesses, but Hooters was not required to reciprocate. *Id.*

Upon thirty days' notice, Hooters, but not the employee, had the right to cancel the agreement to arbitrate. *Id.* at 939. The court was heavily persuaded by the method in which the three-person arbitration panel would be selected: the employee and Hooters each select an arbitrator, and then those two select a third. *Id.* at 938–39. The court stated, "Good enough, except that the employee's arbitrator and the third arbitrator must be selected from a list of arbitrators created exclusively by Hooters." *Id.* at 938–39. Because Hooters "so skewed the process in its favor" by promulgating "this system of warped rules" that deprived the plaintiff "arbitration in any meaningful sense of the word," the Fourth Circuit upheld the district court's denial of the motion to compel arbitration. *Id.* at 941.

Plaintiff asserts the arbitration clause at issue in the case *sub judice* is one-sided and oppressive:

> Among its one-sided and oppressive features are the failure of the arbitration clause to require Green Tree II to submit to arbitration itself, the granting of control over the entire arbitration process to Green Tree II, the failure to provide where or when arbitration is to be conducted, the failure to provide that the arbitration will be conducted by a recognized arbitration agency according to any accepted rules or procedures, the failure to provide which party will pay the costs for arbitration, and, most importantly, the giving of control to Green Tree II to select the arbitrator.

(Resp. in Opp'n at 13.) Plaintiff acknowledges the Supreme Court upheld a similar arbitration provision in *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). In *Green Tree,* the Supreme Court addressed the question of whether an agreement to arbitrate was unenforceable because it says nothing about the costs of arbitration "and thus fails to provide ...

protection from potentially substantial costs" of pursuing a claim in the arbitral forum. *Green Tree,* 531 U.S. at 89, 121 S.Ct. 513. The Court upheld the agreement, despite noting that the litigant may not be able to effectively vindicate her rights in an arbitral forum if there are large arbitration costs. *Id.* at 90, 121 S.Ct. 513. "The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable." *Id.* at 91, 121 S.Ct. 513.

In *Murray v. United Food & Commercial Workers International Union Local 400,* 289 F.3d 297 (4th Cir.2002), the Fourth Circuit reversed the district court's decision to compel arbitration, concluding the method for selecting a decisionmaker was very similar to that which was rejected in *Hooters. Murray,* 289 F.3d at 302–03. As a condition of his employment, Murray was required to enter into an arbitration agreement "drafted by his prospective employer that placed control over the selection of the single arbitrator for employment disputes in the hands of his employer." *Id.* at 303. Although the parties engaged in an alternative-strike method to arrive at the single arbitrator, the court noted the parties exercised these strikes from a list prepared by the Local 400 "with absolutely no specified constraints." *Id.* Furthermore, "[i]n the unlikely event the hand-picked arbitrator rules against Local 400, the language of the arbitration agreement in conjunction with the Union's Bylaws, even if not ultimately enforceable, might be construed by the employee as prohibiting a decision that would contravene the President's right to terminate the employee in any event." *Id.*

The Court of Appeals of South Carolina, however, upheld an arbitration provision almost identical to the one in the case *sub judice* in *Lackey v. Green Tree Financial*

*Corporation,* 330 S.C. 388, 498 S.E.2d 898 (Ct.App.1998). The clause provided that Green Tree was to select the arbitrator with the consent of the respondents, and the trial court found "this to be unconscionable because the 'veto' power of the respondents was a 'hollow right.'" *Lackey,* 330 S.C. at 399, 498 S.E.2d at 904. The Court of Appeals of South Carolina disagreed:

> [T]he respondents are protected because the clear language of the agreement allows them to block Green Tree's selection of arbitrators by simply disagreeing with it. Without their agreement, no arbitrator can be selected by Green Tree. Under the default provisions of the FAA, a court then makes the selection of an impartial arbitrator upon application of either party. There is nothing inherently unfair or oppressive about this process. Contrary to the finding of the trial court, the "veto" power held by respondents provides enough control over the selection process to assure the appointment of a neutral arbitrator.

*Id.* at 399–400, 498 S.E.2d at 904. The United States Court of Appeals for the Third Circuit reached a similar conclusion in *Harris v. Green Tree Financial Corporation,* 183 F.3d 173, 183–84 (3d Cir.1999) (concluding a similar provision which provided that the arbitrator will be "selected by us with the consent of you" was not substantively unconscionable).

Also in *Lackey,* the Court of Appeals of South Carolina addressed the trial court's conclusion that arbitration would not be compelled because the clause was biased in favor of Green Tree, in that it allowed Green Tree to choose a judicial forum "while denying the respondents the right to 'bring a counterclaim' to any such legal action." *Lackey,* 330 S.C. at 400, 498 S.E.2d at 904. The trial court concluded the respondents "would be injured by this 'lack of mutuality' if arbitration was compelled." *Id.* at 400, 498 S.E.2d at 904.

The Court of Appeals of South Carolina first noted that the arbitration clause did not prevent the respondents from asserting a counterclaim to a judicial action; rather, the clause provided that such counterclaim was subject to arbitration. *Id.* at 400, 498 S.E.2d at 904. The court ultimately reversed the finding of unconscionability, stating, "[T]here is no requirement that the consideration for one party's obligation to arbitrate all issues under a contract be the other party's obligation to arbitrate all issues under that contract." *Id.* at 402, 498 S.E.2d at 905.

■■ Applying the reasoning of the cases cited herein, the court determines the arbitration agreement is not unconscionable. The Supreme Court has indicated the arbitration provision's failure to provide which party will pay costs does not automatically mean the provision is unconscionable. *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373. Much like in *Randolph,* there is simply no information in the record about costs. *See also Sydnor,* 252 F.3d at 305–06. Furthermore, while Plaintiff asserts the arbitration provision is unconscionable because Green Tree may select a judicial forum but Plaintiff must submit to an arbitral forum, such a provision does not render the clause unconscionable. *See Oblix, Inc. v. Winiecki,* 374 F.3d 488, 490–91 (7th Cir.2004) (stating the fact that the employer "did not promise to arbitrate all of its claims" when the employee did "is neither here nor there" because the employee did not dispute that "the arbitration clause is supported by consideration—her salary"); *Harris,* 183 F.3d at 183 ("[T]he mere fact that Green Tree retains the option to litigate some issues in court, while the Harrises must arbitrate all claims does not make the arbitration agreement unenforceable."); *see also Lackey,* 330 S.C. at 402, 498 S.E.2d at 905. *But see Ticknor v.*

*Choice Hotels Intern., Inc.,* 265 F.3d 931, 940 (9th Cir.2001) (concluding the district court correctly determined the Montana Supreme Court would likely hold an arbitration provision unconscionable under Montana law when the provision allowed Choice to bring its claims against Ticknor in state or federal court but required Ticknor to submit all claims to binding arbitration at Choice's headquarters).

■ To the extent Plaintiff argues the arbitration clause is unconscionable because of the method for selecting the arbitrator, the court rejects that argument for the same reasons the Court of Appeals of South Carolina rejected the argument: Plaintiff has some input into who the arbitrator will be, and if the parties cannot agree, the FAA indicates the court will appoint a neutral arbitrator. The court notes the method for selecting an arbitrator in the case *sub judice* is easily distinguishable from the method at issue in *Hooters.* The arbitrator in *Hooters* had to be selected from a list prepared by Hooters, and there were no restrictions as to who could be on that list. While Green Tree does have the right to choose the arbitrator in the case *sub judice,* that right is not an unfettered one. If Plaintiff does not consent to the arbitrator named by Green Tree, that individual will not serve as the arbitrator. The only way arbitration can proceed is for Plaintiff to consent to the arbitrator named by Green Tree or for the parties to petition the court to name an arbitrator. Such an arrangement is not so one-sided as to render the arbitration clause unconscionable.

■ Plaintiff's last argument is this court should deny Defendant Green Tree's Motion to Compel Arbitration because it has waived its right to arbitration. (Resp. in Opp'n at 16.) Plaintiff, as the party opposing arbitration, " 'bears the heavy burden of proving waiver.' " *MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 250

(4th Cir.2001) (quoting *American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996)). The Fourth Circuit addressed the issue of waiver in the context of an arbitration clause in *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.,* 380 F.3d 200 (4th Cir.2004). In that case, the subcontractor Patten filed suit against the contractor Skanska on December 18, 2002, asserting that Skanska had not paid Patten all money due for work Patten had performed. *Patten Grading,* 380 F.3d at 202–03. Skanska removed the action, and the parties thereafter engaged in written discovery, including interrogatories and requests for production. *Id.* at 203. In July of 2003, Patten acknowledged a rider to the subcontract agreement it entered into with Skanska's predecessor in interest, which required claims arising under the contract to be submitted to arbitration, and the parties participated in court-ordered mediation in August of 2003. *Id.* On August 19, 2003, Skanska sought an order compelling Patten to submit its claims to arbitration, and the district court denied that motion, finding Skanska's participation in the litigation amounted to a waiver of its right to arbitration. *Id.* The Fourth Circuit disagreed.

The court first addressed the district court's conclusion that the eight month delay between Patten's filing of the complaint and Skanska's motion to compel arbitration constituted a default under the FAA. *Id.* at 204–05. The Fourth Circuit measured the delay not from the moment the complaint was filed but from the moment that Skansa became aware of the arbitration clause, which occurred during discovery on May 29, 2003. *Id.* at 205. The court thus charged Skanska with a delay of four months and indicated this period of delay, without more, was "insufficient to demonstrate a party's waiver of its right to arbitration." *Id.* In a footnote, the court noted, "Even if we were to credit

Patten's argument that the delay was of eight months duration, we are not persuaded a delay of such length would suffice to establish prejudice." *Id.* at 205 n. 5 (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985)).

The court then addressed Patten's argument that it would be prejudiced if required to arbitrate now because the parties had engaged in several pre-trial activities. *Id.* at 206. Noting the extent of the moving party's "trial-oriented activity is a material factor in assessing a plea of prejudice," the court found no prejudice on the facts. *Id.* The court stated that it had "previously held that a party's filing of minimal responsive pleadings, such as an answer or compulsory counterclaim, are not necessarily inconsistent with an intent to pursue arbitration." *Id.* Even though the district court resolved three motions prior to Skanska's motion, "none were filed by Skanska and none addressed the merits of any of Patten's claims." *Id.* The court also found no prejudice as a result of the minimal amount of discovery conducted and further determined that the "imminence of trial is not itself a sufficient basis from which to demonstrate prejudice." *Id.* at 206–07 Lastly, the fact that Skanska participated in court-ordered mediation did not support a finding of waiver because the court refused to create a rule that would require a party seeking arbitration to avoid a finding of default by ignoring court-ordered discovery deadlines. *Id.* at 207. The court thus reversed the district court's order denying Skanska's motion to compel arbitration. *Id.* at 209; *see also MicroStrategy*, 268 F.3d 244 (concluding that MicroStrategy did not waive its right to arbitration when (1) it filed three separate actions against Lauricia before seeking arbitration but sought arbitration within one month of Lauricia's filing of a complaint (2) the time between the filing of the first action and the arbitration request was less than six months; and (3) MicroStrategy's prior state actions were primarily unrelated to the claims asserted by Lauricia); *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250 (4th Cir.1987) (affirming district court's denial of motion to compel arbitration when Merrill Lynch waited over four years before seeking to compel arbitration; the district court had considered eight discovery motions, four of which were made by Merrill Lynch; and Merrill Lynch had filed two motions in limine, one motion for partial summary judgment, which was granted, and three motions to dismiss).[3]

---

**3.** In a recent case, the Court of Appeals of South Carolina stated,

> Generally, the factors our courts consider to determine if a party waived its right to compel arbitration are: (1) whether a substantial length of time transpired between the commencement of the action and the commencement of the motion to compel arbitration; (2) whether the party requesting arbitration engaged in extensive discovery before moving to compel arbitration; and (3) whether the non-moving party was prejudiced by the delay in seeking arbitration. These factors, of course, are not mutually exclusive, as one factor may be inextricably connected to, and influenced by, the others.

*Rhodes v. Benson Chrysler–Plymouth, Inc.*, 374 S.C. 122, 126, 647 S.E.2d 249, 251 (Ct. App.2007). Regardless of whether the court applies this rule or the rules enunciated in *MicroStrategy* and *Patten Grading*, the court concludes that there has been no waiver in light of the fact that the amended pleadings radically alter the Plaintiff's claim, and Defendant Green Tree sought to compel arbitration very shortly after the Amended Complaint was filed. Indeed, as the Court of Appeals of South Carolina noted, "each case turns on its particular facts." *Rhodes*, 374 S.C. at 127, 647 S.E.2d at 252.

On the facts of this case, the court determines that Defendant Green Tree has not waived its right to arbitration. As the court noted in *MicroStrategy*, "the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*" *MicroStrategy*, 268 F.3d at 249. "'Prejudice ... refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" *American Reliable Ins. Co. v. Stillwell*, 212 F.Supp.2d 621, 628 (N.D.W.Va.2002) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir.1997)). Plaintiff points mainly to the fact that this lawsuit was filed on October 5, 2006, and the Motion to Compel Arbitration was filed on November 9, 2007. The court acknowledges this delay is lengthy but determines this delay does not support a finding of prejudice.

Plaintiff filed an Amended Complaint on October 16, 2007, and Defendant Green Tree filed the Motion to Compel Arbitration less than one month later. The court finds that because the Amended Complaint altered the lawsuit significantly, Defendant Green Tree will not be deemed to have waived its right to compel arbitration merely because of the delay. *Cf. Karnette v. Wolpoff & Abramson, LLP*, 444 F.Supp.2d 640, 648 (E.D.Va.2006) ("Here, W & A only delayed six weeks between the filing of the Amended Complaint and the filing of the Motion to Compel Arbitration. Even if measured from the date the original Complaint was filed, the delay is four months. Such a delay—however measured—is not, standing alone, grounds to find a waiver.") As noted above, the original Complaint listed causes of action for (1) breach of an insurance contract, (2) negligent misrepresentation, (3) bad faith, (4) conversion, (5) civil conspiracy, and (6) temporary and permanent restraining order. (*See* Compl.) The Amended Complaint, however, listed causes of action for (1) breach of contract; (2) violation of Home Owners Equity Protection Act (HOEPA); (3) fraud; (4) constructive fraud; (5) breach of fiduciary duty; (6) negligent misrepresentation; (7) violation of the unfair trade practices act; (8) unconscionability; and (9) temporary and permanent restraining order. (*See* Am. Compl.) Reading the allegations of the original Complaint, it is clear that Plaintiff's main claim concerns the disability benefits he claims he did not, but should have, received. Indeed, nearly every allegation of the original Complaint concerns the disability insurance. Reading the allegations of the Amended Complaint, it is clear, as Defendant Green Tree suggests, that the claims against it have been "radically altered." (Mem. in Supp. at 3.) In addition to alleging he contracted for disability benefits he did not receive, Plaintiff also attacks the loan itself and the procedures related to its origination. These new allegations have significantly altered the claims before the court, and although the parties engaged in discovery on the original Complaint, discovery has not been conducted on the Amended Complaint. In addition, there have been no dispositive motions filed by any party in this case, and the pleadings have recently been amended. Thus, despite the amount of time that has passed between the filing of the original Complaint and filing of the Motion to Compel Arbitration, the lawsuit has not progressed very far within the judicial system. Accordingly, on these facts, the court finds no prejudice and determines Defendant Green Tree has not waived its right to arbitration.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant Green

Tree's Motion to Compel Arbitration is **GRANTED.**

**AND IT IS SO ORDERED.**